**Father Khoat Van TRAN, Appellant,**

v.

**The Most Reverend Bishop Joseph A. FIORENZA and the Catholic Diocese of Galveston–Houston, Appellees.**

No. 01–95–01215–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 22, 1996.

Rehearing Overruled Dec. 9, 1996.

---

[redacted] 

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

Robert P. McConnell, Peter Costea, Houston, for appellant.

Keith H. Odenweller, C. Robert Mace, Ren P. Rigby Jr., Lauren G. Rigby, Houston, for appellees.

Before SCHNEIDER, C.J., and TAFT and ANDELL, JJ.

## OPINION

TAFT, Justice.

Appellant, Father Khoat Van Tran, sued two sets of defendants, the Most Reverend Bishop Joseph A. Fiorenza and the Catholic Diocese of Galveston–Houston, and the Reverend Monsignor Sidney J. Marceaux and the Catholic Diocese of Beaumont, for defamation and intentional infliction of emotional harm. Both sets of defendants filed motions for summary judgment which were granted. Father Tran appeals only as to appellees Bishop Fiorenza and the Galveston–Houston Diocese (collectively Fiorenza), arguing that the district court erred as a matter of law in granting Fiorenza's motion for summary judgment because a genuine issue of material fact exists. We affirm.

### Facts

Father Tran is a Vietnamese Catholic priest who immigrated to the United States in 1975 as a religious and political refugee. He is now an American citizen. Father Tran wanted to help other Vietnamese refugees by establishing a fishing village. He sought the assistance of the Catholic Conference to find a suitable area to establish such a community. Father Tran and the refugees chose to settle in Port Arthur and received support from the Beaumont Diocese.

Father Tran's next goal was to help the refugees form a Vietnamese parish to provide "spiritual support and guidance in a more familiar environment as they made their American transition." Father Tran sought the help of the Beaumont Diocese to purchase a building suitable for worship for the new parish.

After some negotiations with the diocese, Father Tran and the refugees formed their own corporation, Resurrection Community, Inc. This entity raised money and purchased an old Baptist church in Port Arthur. Father Tran acted as the minister of the new church. The Catholic Church became concerned not only because it had not given permission to Father Tran to become the minister, but also because it did not have title to the new church, a prerequisite to any church being recognized as a valid Catholic church.

Father Tran and the Resurrection Community refused to transfer title to the new church over to the Diocese. Moreover, with Father Tran as its leader, the Vietnamese church, while claiming to be Catholic, continued to operate without recognition of the Diocese or the Catholic Church. As a result, the Diocese issued a letter to Father Tran stating that if he failed to "immediately cease performing priestly acts, which require faculties,[1] [he would] be automatically excommunicated." Father Tran acknowledged the letter and responded that he would abide by the request.

Father Tran and the Vietnamese congregation then informed the Diocese that it was separating from the main body of the Church and joining the Traditionalist Catholic sect, the Society of St. Pius X, under Archbishop Lefebrve. After some time, the turmoil surrounding Father Tran settled down. Father Tran's activities after he joined the Society of St. Pius X are unclear.

In 1993, an Austin parishioner wrote a letter to the Bishop of the Beaumont Diocese, Bishop Boudreaux, predecessor of Monsignor Marceaux, inquiring about Father Tran's standing with the Church. Reverend Marceaux, in a reply letter to the parishioner, stated that "Father Khoat is not in good standing with his diocese, ... and does not enjoy the faculties to function as a priest in Austin or any other Diocese." Also in 1993, Professor Fastiggi, a religious studies professor at a Catholic university in Austin, wrote a similar letter to Bishop Fiorenza. Fiorenza responded that Father Tran was excommunicated, was not in good standing, and "says mass to a small number of people, including elderly women who have been deceived by him." Lastly, Bishop Fiorenza sent a memorandum to "all pastors" to refrain from advertising or encouraging parishioners to attend a mass "being offered by a Reverend Khoat Tran, an excommunicated priest who has left the Catholic Church by a formal act." Bishop Fiorenza's letter to Professor Fastiggi and the memorandum to all pastors contain the statements made the subject of this suit.

### Judicial Notice

As a preliminary matter, Father Tran asks this Court to take judicial notice of the Codes of Canon Law of the Catholic Church of 1917 and 1983. We recognize that a court shall take judicial notice if requested by a party and supplied with the necessary information. TEX.R.CIV.EVID. 201(d). In addition, judicial notice may be taken at any stage of the proceeding. TEX.R.CIV.EVID. 201(f). However, appellate courts are reluctant to take judicial notice of evidence when the trial court was not afforded the opportunity to examine and take into consideration that evidence. *Duderstadt Surveyors Supply v. Alamo Express, Inc.*, 686 S.W.2d 351, 354 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). It is the law in Texas that an allegation not contained in the pleadings nor otherwise raised or proven in the trial court cannot be raised for the first time on appeal. *Id.* We decline to take judicial notice as requested by Father Tran because to do so

---

1. Faculties are "the powers or rights granted to bishops by the Holy See, or to priests by their ordinaries, to enable them to exercise certain acts of jurisdiction outside their ordinary competence, i.e., to hear confessions and administer the sacrament of Penance." A Catholic Dictionary 186 (3d ed. 1962) (*nihil obstat* Hubertus Richards, S.T.L., L.S.S.; *Imprimatur*, Georgius L. Craven, January 30, 1957).

would provide us with evidence that was unavailable to the trial court when it considered the motions for summary judgment.

### Ecclesiastical Exemption

■ Father Tran brings five points of error on appeal. As a threshold issue, however, we address Father Tran's second point of error contending the First Amendment of the United State Constitution prohibiting State review of ecclesiastical matters does not bar his defamation claim. Specifically, Father Tran argues that his defamation claim is not directed at an authorized ecclesiastical decision of the Catholic Church; rather, because Fiorenza failed to show that the Church had or properly exercised authority to excommunicate him, or that any excommunication actually occurred, this Court need not address an ecclesiastical matter. Rather, we need only address the question of whether Father Tran was excommunicated. In other words, we need not address the ecclesiastical procedure of excommunication (an ecclesiastical matter), we need only address whether the excommunication actually took place (a non-ecclesiastical matter). If in fact Father Tran had been excommunicated, the truth of that fact would bar the defamation claim; if Father Tran had not been excommunicated, truth could not act to bar the defamation claim. We disagree with Father Tran's rationale because whether Father Tran was excommunicated is unavoidably an ecclesiastical matter.

The First Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of Religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I, XIV. The Constitution thus mandates that government and religion remain separate and accordingly forbids the government from interfering with the right of hierarchical religious bodies to establish their own internal rules and regulations and create tribunals for adjudicating disputes over religious matters. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–709, 724–25, 96 S.Ct. 2372, 2380, 2387–88, 49 L.Ed.2d 151 (1976).

■ The civil courts will, therefore, not intrude into the church's governance of "religious" or "ecclesiastical" matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality. *Higgins v. Maher*, 210 Cal.App.3d 1168, 258 Cal.Rptr. 757 (1989). Furthermore, "courts will not attempt to right wrongs related to the hiring, firing, discipline or administration of clergy." *Id.*, 258 Cal.Rptr. at 757–58. Although such wrongs may exist and be severe, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities which may result from its liberal application. *Id.*, 258 Cal.Rptr. at 760–61. Recognizing that churches, their congregations and hierarchy exist and function within the civil community, however, it is acknowledged that they are as amenable as other societal entities to rules governing property rights, torts and criminal conduct. *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 732–33, 20 L.Ed. 666 (1871). The difficulty comes in determining whether a particular dispute is "ecclesiastical" or simply a civil law controversy in which church officials happen to be involved.

■ "The relationships between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex.App.— Austin 1995, writ denied) (quoting *McClure v. Salvation Army*, 460 F.2d 553, 558–59 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972)). Furthermore, courts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata. *Id.*; *Natal v. Christian & Missionary Alliance*, 878 F.2d 1575, 1577 (1st Cir.1989); *see also Patterson v. Southwestern Baptist Seminary*, 858 S.W.2d 602, 605–606 (Tex.App.— Fort Worth 1993, no writ). Although Father Tran argues that his causes arise in tort, they still arise out of an ecclesiastical matter—the divestiture of his priestly authority.

A California Court of Appeals in *Higgins*, considered issues similar to the issues involved in the case at bar. In *Higgins*, a Roman Catholic priest sued a bishop alleging various torts, premised on the validity of whether he had actually been formally suspended from the Church. The issue was whether the dispute was ecclesiastical or merely a civil law controversy involving church officials. 258 Cal.Rptr. at 758. In granting defendant's general demurrer, the court held that "the authorities are next to unanimous in concluding that civil courts may not involve themselves in reviewing the termination of clergy for theological or disciplinary reasons." *Id.*, 258 Cal.Rptr. at 759–60. The court went on to say:

> [I]f, as part of procedures resulting in the defrocking of a priest, the Bishop makes false accusations, we restrain the civil authorities from becoming involved. The accusations, false or not, pertain directly to the ecclesiastical functions of the church, and we deign not to become involved. *When we know that torts such as those of which Higgins complains occurred as inseparable parts of a process of divestiture of priestly authority, we are most reluctant to sever them from the privileged aura of what might be called ecclesiastical exemption.*

*Id.*, 258 Cal.Rptr. at 761 (emphasis added).

The *Higgins* court pointed out that the priest's complaint arose from employment with and the inner workings of the church; thus, the court reasoned that the priest could not articulate common law torts to overcome the court's preclusion from meddling in the ecclesiastical authority of the church. 258 Cal.Rptr. at 762.

As in *Higgins*, Father Tran's tort claims arise from his divestiture of priestly authority; thus, his tort claims are inseparable from the privileged aura of ecclesiastical exemption. As Bishop of the Galveston–Houston diocese, Fiorenza's administrative duties include informing members of the Catholic Church of the status of its clergy. We believe that statements made by a Bishop in carrying out his administrative duties concerning an excommunication made before, during or after an excommunication, are all part of an ecclesiastical transaction—the divestiture of priestly authority.[2] Accordingly, we overrule point of error two.

Furthermore, because we hold Father Tran's alleged excommunication to be an ecclesiastical matter and because both tort claims arise out of the alleged excommunication, we decline to review Father Tran's remaining points of error.

Accordingly, we affirm the trial court's judgment.

---

**2.** We do note, however, there may be circumstances where a Bishop or other church authority makes statements which overstep the bounds of the authority's administrative duties. When statements are made by a church authority which are clearly intended to defame or inflict emotional distress, the authority has overstepped the bounds of his administrative duties and the statements may fall outside ecclesiastical protection. *See Watson*, 80 U.S. (13 Wall) at 732–33. However, the statements complained of here all relate to Father Tran's standing in the Catholic Church.