**Reversed and Rendered and Memorandum Opinion filed March 3, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00491-CV

---

### BETH YESHUA HAMASHIACH, Appellant

### V.

### MALAIKA ADAN, Appellee

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2010-47551**

---

## MEMORANDUM OPINION

A synagogue appeals the trial court's order granting partial summary judgment in favor of one of its members on her discrimination claim under Chapter 121 of the Texas Human Resources Code. The synagogue alleges that the trial court lacked subject matter jurisdiction over the member's claim. We reverse.

### BACKGROUND

Malaika Adan was a member of Beth Yeshua Hamashiach, a Messianic

Jewish synagogue that rents a space from Sharpstown Baptist Church. Adan is confined to a wheelchair and regularly used the chapel restroom until Sharpstown Baptist began complaining to Beth Yeshua about scratches on the door. A board member of Beth Yeshua informed Adan that she needed to begin using a different restroom in a separate building. Adan complained to the board member that neither restroom was wheelchair accessible.

When Beth Yeshua did not resolve the restroom issue, Adan emailed Mike Jeter, the pastor of Sharpstown Baptist. Adan informed Pastor Jeter that the chapel restroom did not meet the standards set forth in the Americans with Disabilities Act (the "ADA"), that she had a disability, and that she would sue Sharpstown Baptist if the issue was not fixed within thirty days. After discussing the restroom issue, Adan's email stated, in relevant part:

> I am unable to find any Scriptural reference that supports your position. When I ponder this situation, something I do often, I can only recall verses that require you to care for God's sheep. Galatians 6:10 frequently comes to mind, ***As we have therefore opportunity, let us do good unto all [men], especially unto them who are of the household of faith.***

> When you receive this email you will probably contact your lawyer or call an emergency meeting of your Board of Directors to discuss this matter. It is disheartening to realize that past actions of [Sharpstown Baptist] lead me to expect that your first course of action will be reminiscent of that of Rehoboam (I Kings 12:8).

> Ephesians 6 has not been repealed. My battle is not with Caesar.

> This potentially volatile situation is either your Spiritual [sic] wake-up call or your death knell (Psalm 34).

> . . .

> In the beginning GOD…

> Genesis 1:1

(emphasis in original).

Pastor Jeter responded to Adan's email, stating, in relevant part:

Wow. That is interesting because in my Bible reading today Paul writes to the church at Corinth not to take one another to court. He is quite clear that we are to handle problems internally. You might want to add 1 Corinthians 6:1-8 to the Scripture that you used in your email.

Pastor Jeter then explained that the building met the standards set forth in the ADA, but that he would discuss the issue with the grounds committee. Pastor Jeter also suggested that if the restroom issue could not be resolved and Adan still wanted to sue, Sharpstown Baptist could "break all ties with [Beth Yeshua]" and Beth Yeshua could find a new facility that was wheelchair accessible. Adan replied to Pastor Jeter's email with one sentence that stated "[f]ulfillment of I Cor 6 is firmly in your hands."

In response to Adan's email to Pastor Jeter, Rabbi Jim Pratt of Beth Yeshua emailed Adan asking her not to sue Sharpstown Baptist over the restroom issue because "[b]rothers and sisters in Messiah Yeshua are not to take one another to court. I Corinthians 6:1-8. It is our purpose today to try to encourage you for Scriptural reasons to not take Sharpstown Baptist Church to court over the restroom issue." Rabbi Pratt explained that the facilities were grandfathered into the ADA standards and that they were attempting to accommodate her restroom needs. Rabbi Pratt also stated that if Adan's concern over the restroom issue became too difficult, that she should consider taking a temporary leave of absence until Beth Yeshua's new building at another location was completed.

Several days later, Rabbi Pratt and two board members of Beth Yeshua met with Adan to inform her that she was not allowed to attend the synagogue for six weeks. After the meeting, Rabbi Pratt emailed Adan with Beth Yeshua's findings. The email provided, in relevant part:

After much prayer, biblical counsel and consultation, the leadership of

Beth Yeshua haMashiach has decided on the following findings in order for you to be restored and allowed to attend Beth Yeshua again.

a) You are not allowed on the premises of Sharpstown Baptist Church for six weeks from Feb. 11th 2010.

b) You must send an apology letter to Rabbi Jim Pratt, Kathleen Elowitz, Steve Mullins & Pastor Mike Jeter showing evidence of repentance.

c) You are allowed only on Sharpstown Baptist Campus if approved by Sharpstown's Leadership.

These findings are based upon 1 Corinthians 5:11-13 and Ch 6:1-11. Restoration is confirmed in 2 Corinthians 2:5-11 and Proverbs 6:16-19.

Adan filed this suit against Beth Yeshua[1] in Harris County for violations of the Texas Human Resources Code, the Texas Architectural Barriers Act, and the Texas Accessibility Standards. Adan sought injunctive and declaratory relief, a statutory fine, attorney's fees, and costs. Adan moved for partial summary judgment against Beth Yeshua on the limited question of whether Beth Yeshua banned Adan from the synagogue because of her disability in violation of Chapter 121 of the Texas Human Resources Code. On April 17, 2013, the trial court granted Adan's motion for partial summary judgment. The order stated that the trial court "finds" that Adan was a person with a disability, Sharpstown Baptist qualified as a public facility, and Adan was banned from Sharpstown Baptist "because she complained about the restroom facilities on account of her disability, and because she attempted to assert her rights as a person with a disability."[2]

On May 13, 2013, Adan nonsuited her remaining claims under the Texas

---

[1] Adan also sued Sharpstown Baptist but dismissed it from the suit on February 24, 2012.

[2] Generally, it is improper for a trial court to make findings of fact in rendering summary judgment. *See Cotton v. Ratholes, Inc.*, 699 S.W.2d 203, 204 (Tex. 1985) (per curiam). However, because we do not reach the merits of the motion for partial summary judgment, we need not decide whether these "findings" should be treated as findings that the listed facts were conclusively established.

Architectural Barriers Act and the Texas Accessibility Standards. The trial court issued a final judgment on June 17, 2013. The trial court declared that Beth Yeshua violated Adan's rights under Chapter 121 of the Texas Human Resources Code and discriminated against her by denying her admittance to Sharpstown Baptist because of her disability. The court granted Adan injunctive relief and awarded her statutory damages in the amount of $1,000, attorney's fees in the amount of $58,915.00, costs in the amount of $2,032.90, and post-judgment interest. Additionally, the trial court awarded Adan $10,000 in the event Beth Yeshua unsuccessfully appealed to the intermediate court of appeals and $15,000 in the event Beth Yeshua unsuccessfully appealed to the Texas Supreme Court.

## STANDARD OF REVIEW

When there is an issue as to the trial court's subject matter jurisdiction, the trial court must first determine that it has subject matter jurisdiction before getting to the merits. *Curry v. Harris Cnty. Appraisal Dist.*, 434 S.W.3d 815, 820 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Lack of jurisdiction may be raised when religious-liberty grounds form the basis for the jurisdictional challenge. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). Beth Yeshua raises the issue of subject matter jurisdiction for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties."). Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

When jurisdiction is challenged on the pleadings, the plaintiff has the initial burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent.

5

*Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not reveal incurable defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then the plaintiff should not be afforded an opportunity to amend. *Id*. at 227.

When jurisdictional allegations are challenged, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id*. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*. at 228. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on jurisdiction as a matter of law. *Id*.

## ANALYSIS OF BETH YESHUA'S ISSUES

In three issues, Beth Yeshua contends that the trial court erred in granting partial summary judgment to Adan on her discrimination claim. In its first issue, Beth Yeshua asserts that the ecclesiastical abstention doctrine deprived the trial court of subject matter jurisdiction over Adan's claim. In its second and third issues, Beth Yeshua argues that the trial court erred in granting partial summary judgment to Adan and awarding her appellate attorney's fees. Because Beth Yeshua's first issue is dispositive, we need not address Beth Yeshua's second and third issues.

### Ecclesiastical Abstention Doctrine

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.; *see also Cantwell v. Connecticut*, 310 U.S. 296,

6

303 (1940). This provision forbids the government from interfering with the rights of hierarchical religious bodies to either establish their own internal rules and regulations or create tribunals for adjudicating disputes over religious matters. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708−09, 724−25 (1976). Government action is not permitted to interfere with the free exercise of religion by encroaching on a religious institution's ability to manage its internal affairs. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

The Texas Supreme Court has recognized that churches have a fundamental right "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Westbrook*, 231 S.W.3d at 397 (quoting *Kedroff*, 344 U.S. at 116); *see also Watson v. Jones*, 80 U.S. 679, 727 (1871). The autonomy of a church in managing its affairs and deciding matters of church discipline has long been afforded broad constitutional protection. *Westbrook*, 231 S.W.3d at 397; *see also Watson*, 80 U.S. at 733.

To enforce this constitutional provision, Texas courts have utilized the "ecclesiastical abstention doctrine."[3] *Reese v. Gen. Assembly of Faith Cumberland Presbyterian Church in Am.*, 425 S.W.3d 625, 627 (Tex. App.—Dallas 2014, no pet.). The ecclesiastical abstention doctrine arises from the Free Exercise Clause of the First Amendment and provides that the First Amendment prohibits civil courts from exercising jurisdiction over matters concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Milivojevich*, 426 U.S. at

---

[3] This doctrine has variously been referred to as one of "deference," "ecclesiastical abstention," or "ecclesiastical exemption." *Jennison v. Prasifka*, 391 S.W.3d 660, 661 n.1 (Tex. App.—Dallas 2013, no pet.).

713−14; *see also Jennison*, 391 S.W.3d at 665. Under this doctrine, courts will not attempt to right wrongs related to the hiring, firing, discipline, or administration of clergy. *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ) (quoting *Higgins v. Maher*, 210 Cal.App.3d 1168, 1175 (Cal. Ct. App. 1989)). "Although such wrongs may exist and be severe, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities which may result from its liberal application." *Id*.

However, the Texas Supreme Court has also recognized that "[w]hile Article I, Section 6 of the Texas Constitution and the First Amendment to the United States Constitution afford broad protection to the free exercise of religion, they do not necessarily bar all claims which may touch on religious conduct." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996). The Free Exercise Clause does not protect actions in violation of social duties or subversive of good order. *See id*.; *see also Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 12 (Tex. 2008) ("[R]eligious practices that threaten the public's health, safety, or general welfare cannot be tolerated as protected religious belief."). Thus, acknowledging that churches, their congregations, and hierarchy exist and function within the civil community, they can be as amenable to rules governing civil, contract, or property rights, as any other societal entity. *Lacy v. Bassett*, 132 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.) ("[C]ourts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy.").

In determining whether the ecclesiastical abstention doctrine applies, courts must analyze whether a particular dispute is "ecclesiastical" or simply a civil law controversy in which church officials happen to be involved. *See Tran*, 934 S.W.2d

8

at 743. To resolve this issue, courts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata. *Id.*; *Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex. App.—Austin 1995, writ denied).

### The Trial Court Did Not Have Subject Matter Jurisdiction over This Dispute

Beth Yeshua contends that the trial court lacked subject matter jurisdiction because the ecclesiastical abstention doctrine barred the court from resolving the issue of why Adan was temporarily banned from attending worship at the synagogue.

Under the ecclesiastical abstention doctrine, Beth Yeshua asserts that the trial court did not have subject matter jurisdiction to determine whether Adan's temporary ban from the synagogue was issued in retaliation for claiming rights under disability law or whether it was issued as a form of ecclesiastical discipline for her tone and scriptural accusations against Pastor Jeter. Beth Yeshua argues that this question entangles the court into matters of religious liberty and interferes with Beth Yeshua's right to manage its internal affairs in violation of the First Amendment.

In response, Adan contends that the court has subject matter jurisdiction because Beth Yeshua banned Adan because of her disability, not in furtherance of religious morals or discipline. Adan asserts that because there was "no church-related reason" for her exclusion from the synagogue and this was a purely secular matter, the ecclesiastical abstention doctrine does not deprive the court of subject matter jurisdiction over her claim.

When reviewing Adan's claim and the evidence relevant to the jurisdictional issue, we conclude that the trial court improperly reached the merits of Adan's claim because the ecclesiastical abstention doctrine applies. *See In re Godwin*, 293

9

S.W.3d 742, 750 (Tex. App.—San Antonio 2009, orig. proceeding) (holding that former church member's claims against pastor and church for intentional infliction of emotional distress, defamation, and fraud were barred by the ecclesiastical abstention doctrine). Because this lawsuit centers on a religious dispute, the trial court was constitutionally prohibited from exercising subject matter jurisdiction over it. *Williams v. Gleason*, 26 S.W.3d 54, 60 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Because the genesis of this lawsuit implicates and, is permeated throughout by, what is essentially an ecclesiastical dispute, we are constitutionally prohibited from exercising jurisdiction over it."); *Tran*, 934 S.W.2d at 743 (holding that the trial court lacked subject matter jurisdiction over catholic priest's claims for defamation and intentional infliction of emotional harm).

Adan's original petition claims that Beth Yeshua's refusal to admit her to the synagogue violated the Texas Human Resources Code. Adan's motion for partial summary judgment also claims that she was discriminated against because of her disability. Although Adan claims this is a purely secular matter, Adan's Texas Human Resources Code claim and the damages she seeks arise from Beth Yeshua's decision to temporarily ban Adan from worshiping at the synagogue.

Adan's own evidence affirmatively demonstrates that the trial court lacks subject matter jurisdiction over her claim because the religious and secular aspects of Adan's complaint are so far intertwined. *See Westbrook*, 231 S.W.3d at 391−92 (holding that the trial court lacked subject matter jurisdiction because the court could not divide the secular and religious aspects of plaintiff's claim). Attached to Adan's motion for partial summary judgment are a series of communications between Adan and Pastor Jeter and Adan and Rabbi Pratt. When the restroom issue was not resolved, Adan emailed Pastor Jeter asking him to fix it and cited to the Americans with Disabilities Act as well as several Bible verses as reasons why he

10

had a duty to do so. Adan claimed that the Bible required Pastor Jeter to "care for God's sheep" and that "[t]his potentially volatile situation is either your Spiritual [sic] wake-up call or your death knell." Adan also threatened to sue Sharpstown Baptist if the issue was not resolved.

Rabbi Pratt then sent Adan a letter asking Adan not to sue Sharpstown Baptist because "[b]rothers and sisters in Messiah Yeshua are not to take one another to court." Following a meeting between Adan and Rabbi Pratt, Beth Yeshua issued findings for Adan's temporary ban from the synagogue. The email states that the findings were reached after "much prayer, biblical counsel and consultation" and were based on several Bible verses.[4]

In its response to Adan's motion for partial summary judgment, Beth Yeshua attached the affidavit of Rabbi Pratt. Rabbi Pratt stated that the temporary ban was issued solely because of Adan's email to Pastor Jeter. Rabbi Pratt explained that the "ban was based on correspondence addressed to our host Christian congregation's Rev. Pastor Jeter." He further stated that:

> My decision to issue an ecclesiastical discipline against Ms. Adan was no ruse or subterfuge. First of all, the tone of the email from Ms. Adan to Rev. Pastor Jeter represented the height of impertinence under any circumstances but most especially when directed by one of my lay congregants against the Pastor of a Christian congregation that has graciously and ecumenically extended itself to us.
>
> …
>
> Putting aside, therefore, the ADA issue (both empty, not directed at me, and not a battle in the civil realm to begin with), I found the remainder of the letter represented by the height of arrogance and impertinence through the presumptuousness exhibited by her scriptural cherrypicking directed at Rev. Pastor Jeter.

Rabbi Pratt also stated that a congregant in Beth Yeshua sent him Adan's letter to

---

[4] The email states that "[t]hese findings are based upon 1 Corinthians 5:11-13 and Ch 6:1-11. Restoration is confirmed in 2 Corinthians 2:5-11 and Proverbs 6:16-19."

Pastor Jeter along with an explanation for her action. In Adan's email to her fellow congregant, she stated that the email she wrote to Pastor Jeter was "written by G-d" and that if she had written it, "the letter would have been replete with accusations and recriminations." Rabbi Pratt stated in his affidavit that the "reference to 'G-d' is significant in the Jewish tradition since the holy name's mere utterance is an assertion that the speaker or writer has power over the person named."

The pleadings and relevant jurisdictional evidence demonstrate that this was a religious dispute between a congregant and one of its members. Although Adan initially complained to Pastor Jeter about the restroom, she unilaterally injected religious issues into a secular controversy. The series of communications attached to Adan's motion provide evidence that she was not banned from worship for complaining about the restroom, but rather she was temporarily banned for the manner in which she handled the situation. This evidence that Beth Yeshua decided to punish Adan for her actions and threats against Pastor Jeter, which it deemed contrary to the synagogue's values and its interpretation of the Bible, indicates that the punishment was an exercise of a religious function that the court may not impede. *See In re Godwin*, 293 S.W.3d at 748 (holding that the pastor and church's "decision to discipline [the plaintiff] for conduct it deemed contrary to both their Christian values and their interpretation of the Bible is an inherently religious function with which civil courts should not interfere").

Although Adan claims that she was discriminated against because of her disability, this claim arises out of an ecclesiastical matter—Beth Yeshua's decision to temporarily ban Adan from worshiping with the congregation of Beth Yeshua. *Id*. at 749 (stating that the pastor and church's discipline was "directed to church governance and maintaining harmony within the congregation"); *see Williams*, 26 S.W.3d at 59 ("Although the [plaintiffs] argue their claims arise in tort, we find

that each claim implicates an ecclesiastical matter, namely their subjection to the church's discipline."); *Tran*, 934 S.W.2d at 743 (holding that the trial court lacked subject matter jurisdiction because the priest's defamation claim arose out of the church's decision to fire him). This intertwining of the religious and secular aspects of Adan's complaint deprives the trial court of subject matter jurisdiction over Adan's claim.

Adan cites to *Tilton* for the proposition that the First Amendment does not bar all claims that touch on religious conduct. 925 S.W.2d at 677. Adan asserts that the First Amendment does not protect actions that are "in violation of social duties or subversive of good order." *Id*. However, Adan's claim does not merely touch on religious conduct; rather, Adan's claim is intertwined with and arises out of Beth Yeshua's decision to ban her from synagogue, which is an inherently religious function. Whether Beth Yeshua's explanation that this religious discipline was issued because of Adan's use of scriptural accusations against Pastor Jeter was genuine, or whether Adan was disciplined for asserting her rights as a disabled person, is a question the trial court cannot determine without inserting itself into internal matters of the synagogue's discipline. *See Starkman v. Evans*, 198 F.3d 173, 175 (5th Cir. 1999) (holding that the Free Exercise Clause barred choir director's claims against church and reverend under the ADA and employment law); *Becker v. Clardy*, No. 03-10-00376-CV, 2011 WL 6756999, at *4 (Tex. App.—Austin Dec. 22, 2011, pet. denied) (mem. op.) (holding that the ecclesiastical abstention doctrine barred religious teacher's claim against a co-worker).

Adan also argues that the trial court had subject matter jurisdiction because her claim can be decided by "neutral principles of law." Under this approach, a court may interpret church documents, such as a church constitution, in purely secular terms without relying on religious precepts in resolving the conflict. *Jones*

*v. Wolf*, 443 U.S. 595, 603−04 (1979). However, if the matter cannot be determined by the court without resolving a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. *Id.* at 604; *see also Hawkins v. Friendship Missionary Baptist Church*, 69 S.W.3d 756, 759 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In this case, there are no constitutions, by-laws, or other governing documents in the record indicating how the synagogue is governed. The trial court determined on summary judgment that Beth Yeshua violated the Texas Human Resources Code because it discriminated against her by denying her admittance to Beth Yeshua. But there are no neutral principles of law that can be used to answer the question why Adan was denied admittance, which would require the courts to improperly resolve a religious controversy.

We sustain Beth Yeshua's first issue regarding subject matter jurisdiction.

## CONCLUSION

We hold that the trial court did not have subject matter jurisdiction. Accordingly, we reverse the trial court's judgment and render judgment dismissing without prejudice the case.


/s/    Ken Wise
       Justice


Panel consists of Justices Boyce, Busby, and Wise.

14