FILED
17-0637
12/21/2017 3:18 PM
tex-21442581
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

NO. 17-0637

_____

# IN THE SUPREME COURT OF TEXAS
_____

## THE DALLAS MORNING NEWS, INC. AND KEVIN KRAUSE,

## PETITIONERS

## V.

## LEWIS HALL AND RICHARD HALL, INDIVIDUALLY AND ON BEHALF OF RXPRESS PHARMACIES AND XPRESS COMPOUNDING,

## RESPONDENTS
_____

## ON APPEAL FROM THE SECOND COURT OF APPEALS
## FORT WORTH, TEXAS
## NO. 02-16-00371-CV
## TRIAL COURT CAUSE NO. CV16-0309
## 43rd JUDICIAL DISTRICT COURT OF PARKER COUNTY, TEXAS
_____

## RESPONDENTS' RESPONSE TO MOTION FOR JUDICIAL NOTICE
_____

### I.  PETITIONERS' MOTION SHOULD BE DENIED

Petitioners' motion for judicial notice should be denied for the following reasons: 1) under the procedures and deadlines established by the TCPA, the court records could not have been considered by the trial court and should not be considered by the court of appeals pursuant to the TCPA; and 2) the facts

1

Petitioners appear to request notice of are not part of the record and not the type of facts that are subject to notice.

"An appellate court may take judicial notice of a relevant fact that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Freedom Communications, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (citing Tex. R. Evid. 201(b) and *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,* 878 S.W.2d 598, 600 (Tex.1994) (per curiam) (internal quotes omitted). "Under this standard, a court will take judicial notice of another court's records if a party provides proof of the records." *Freedom*, 372 S.W.3d at 623. However, even where court records themselves are properly before a court under this rule, a court "may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file." *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.— Houston [14th Dist.] 2011, no pet.); *cf. In re C.S.,* 208 S.W.3d 77, 81 (Tex.App.-Fort Worth 2006, pet. denied) ("It is appropriate for a court to take judicial notice of a file in order to show that the documents in the file are a part of the court's files, that they were filed with the court on a certain date, and that they were before the court at the time of the hearing.")

Further, "appellate courts are reluctant to take judicial notice of evidence

when the trial court was not afforded the opportunity to examine and take into consideration that evidence." *Tran v. Fiorenza*, 934 S.W.2d 740, 742 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also Sparkman v. Maxwell*, 519 S.W.2d 852, 855 (Tex. 1975) (declining to take judicial notice in part stating reluctance of appellate courts to take notice of matters when the trial court was not requested to do so and had no opportunity to examine the source material). Thus, "[a]s a general rule, appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law." *Freedom*, 372 S.W.3d at 623 (citing *SEI Bus. Sys., Inc. v. Bank One Tex., N.A.,* 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ)). No one has questioned this Court's jurisdiction, and judicial notice for the reasons urged by Petitioners is not proper.

## A. The records could not have been considered by the trial court within the TCPA deadlines

The matter before this Court is an interlocutory appeal from an order denying a motion to dismiss under the TCPA. The TCPA sets forth a specific procedural framework for dismissal of unmeritorious claims to which the statute applies. That framework includes specific mandatory deadlines for filing a motion to dismiss, hearing the motion, and ruling on the motion. The TCPA also establishes what the courts must consider when ruling on a motion to dismiss and, suspends all discovery.

3

When a trial court permits limited discovery, as happened in this case, the hearing on the motion must occur no later than 120 days after the motion was filed. Tex. Civ. Prac. & Rem. Code § 27.003. Petitioners filed their motion to dismiss on May 23, 2017. CR 48. The trial court held the hearing on Petitioners' motion to dismiss 116 days later on September 15, 2016. CR 647. The statute requires the trial court to rule on the motion no more than 30 days after the hearing, which, in this case, was Monday October 17, 2016.

By law, the trial court could not have considered any additional evidence after October 17, 2016, even if it wanted to. Nor could the trial court issue any kind of ruling relative to the motion to dismiss after October 17, 2016, whether or not it ruled on the motion. The 30-day deadline for the trial court to rule is mandatory and gives the trial court no discretion to grant extensions of time. *Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 70 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The trial court's options are to rule to dismiss or not dismiss the legal action. *Id.* If the trial court does not rule within 30 days, the TCPA mandates the motion is denied by operation of law. Tex. Civ. Prac. & Rem. Code Ann. § 27.008(a) (West).

Given the deadlines, the actual court records filed in a separate case five and seven months after the hearing deadline could not have been before the trial court. That the documents contain pleading allegations of an entity affiliated with

4

Respondents that may raise a fact question as to the knowledge or belief of Respondents' positions or arguments in this case makes no difference. This is not a case in which an unjust judgment has been entered. Respondents are quite certain that Petitioners will be free to explore these court records and the factual inferences they raise in the normal course of discovery and trial upon remand should they choose. But these matters are neither for this Court's consideration nor appropriate for remand to the trial court for a second bite at the TCPA apple.[1] *See SEI Bus. Sys., Inc. v. Bank One Tex., N.A.,* 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ) (denying request for judicial notice of certified records of the Secretary of State that were not before the trial court as doing so would essentially make the court of appeals a court of general, rather than appellate, jurisdiction). Had it not been for Respondents' request for discovery, which resulted in Petitioners acquiring an allegedly authenticated version of the entire search warrant, this hearing and ruling would have come well before September 15, 2016. It appears Petitioners will stop at nothing to avoid facing Respondents' meritorious claims on even playing field without the benefit of a statutory shield from discovery to hide behind.

## B. The "Fact(s)" do not meet the standard for judicial notice

[1] If Respondents' allegations regarding Petitioners' role in publishing the stories with knowledge that the initial search warrant was essentially false prove to be true after discovery, Respondents doubt they could claim that Petitioners withheld material information during the TCPA phase. Petitioners chose to utilize the TCPA and its discovery stay then vehemently opposed a request to depose Krause as was their right under the statute.

Although veiled in allegations of misrepresentations and failure to disclose, it appears that the primary fact Petitioners request judicial notice of is that Respondents are under federal investigation. To be the proper subject of judicial notice, a fact must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Office of Pub. Util. Counsel v. Pub. Util. Com'n of Texas*, 878 S.W.2d 598, 600 (Tex. 1994) (quoting Tex. R. Evid. 201(b)(2)). Tellingly, Petitioners do not outright argue that the September search warrant establishes that Respondents were under investigation at the time the articles were published. They repeatedly state that clearly Respondents knew they were under investigation [in September] while referring to the court records and state Respondent Richard Hall's testimony to the contrary has tainted these proceedings. However, their argument surrounding the September search warrant suffers the same infirmity as the February search warrant—it only raises an inference that Respondents are under investigation.

Furthermore, Petitioners cannot credibly argue that pleading allegations of a separate entity not party to this matter establish a fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Guyton*, 332 S.W.3d at 693 (holding court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file). There is absolutely no evidence that the

6

statement is or can be directly attributed to Richard Hall or any of the named parties in this case. It is a pleading allegation of an entity not before the court. On its face, the fact is incapable of ready determination as different persons are asserting competing statements.

While court records are generally considered a reliable source for the purpose of judicial notice to establish things such as the existence of court records, entry of a judgment or other order, and when a document was filed, that does not mean that this Court may judicially notice the truth of allegations found in pleadings, motions, and briefs. Courts may not take judicial notice of the truth of allegations contained in pleadings and motions. *See Guyton v. Monteau*, 332 S.W.3d at 693. Petitioners clearly believe, for their purposes, that any government record or court record, judicially noticed or not, establish not just facts, but indisputably *true* facts. Just because the "facts" are contained in a court record does not automatically establish that they are true. *Id*.

## C. Petitioners' Current Arguments and Representations are Contrary to their Pre-Opinion Representations to the court of appeals

Petitioners have gone to great length to cast Respondents in a less than favorable light under the guise that the September search warrant establishes that they are under investigation, thus disproving Respondents' affidavits.

Petitioners do not expressly state that this "new" evidence establishes the truth of their reporting. In fact, they state that Respondents have known they were

under investigation since at least September 15, 2016. Assuming only for the sake of argument that the court records establish that Respondents are under investigation, it does not follow or establish that the same was true eight months earlier when Petitioners reported such. In fact, Petitioners expressly represented to the court of appeals:

> Notably, the record does not contain any evidence relating to the current status of the investigation, including whether Respondents have been searched or raided. The declaration testimony supporting the statements in their Response Brief that they have not been searched or raided was submitted in July 2016. CR 760-63. ***Because the determination of whether the DMN Articles' reporting was true must be made as of the date of the Articles' publication in February the current status of the investigation does not affect the issues raised here.***
> (Appellants' Reply Br. at 13 n.3) (emphasis added).

It appears that Petitioners are being opportunistic in what they represent to the courts in the same manner they accuse Respondents. The quote above is surely premised on Petitioners' argument that the February search warrant left no room to doubt that Respondents were under federal investigation (at the time the articles were published). The court of appeals dispensed with the cornerstone of Petitioners' case holding that, given the procedural posture of this case and Respondents burden under the TCPA, Petitioners' argument is wrong and that the "trial court properly rejected Petitioners' faulty search-warrant argument." Opinion at 17. Only one week later, Petitioners do an about-face and argue that the execution of a subsequent search warrant not only affects the matters raised here,

but establishes that Respondents knew they were under investigation and that they therefore mislead or tainted the proceedings here and below as a result. Respondents vehemently deny any wrongdoing, but assuming Respondents had an obligation to disclose or actually disclosed a search and seizure at their office the day of the hearing, according to Petitioners, it would not affect the issues in this case.[2]

Now that the court has dispensed with Petitioners' only argument and evidence, Petitioners are clearly trying to use alleged wrongdoing by Respondents to get a second shot at dismissal. Based upon Petitioners' own admissions and briefing, evidence related to the current status of an investigation Petitioners argued was ongoing in February 2016 does not affect the issues in this case. If so, how can Petitioners now claim that the court of appeals and the trial court's decisions have been "tainted" by Respondents' alleged misconduct? They cannot. If the February search warrant, the only piece of evidence Petitioners relied on in these proceedings, does not affirmatively establish that Respondents were in fact under investigation at the time of publication, another search warrant issued and executed six months after the final article was published surely suffers the same

---

[2] *If* some "investigation" began *after* publication of the defamatory articles at issue in this case, it is an entirely permissible inference that the publication of the defamatory articles was what prompted the subsequent "investigation". It is reasonable to assume that the publication of the scurrilous accusations in a newspaper with one of the largest circulations in Texas and which is the very epitome of "mainstream media" would prompt the government to at least "look into" the matter. Petitioners argue that the "self-fulfilling prophecy" should exonerate them. This argument is neither logical nor compelling.

infirmities. One reasonable inference to be drawn is that the articles became a self-fulfilling prophecy of sorts. That is, Petitioners' false publications associating Respondents with the very criminals and criminal conduct of those the federal authorities had actually investigated, arrested, and indicted, caused the authorities to execute a search warrant months later.

Even assuming the September search warrant affected the issues in this proceeding under the TCPA, which Petitioners represented it would not, the temporal gap between Petitioners' publication and a search of Respondents' office alone leads to competing factual inferences and is not proper for judicial notice. The bulk of Petitioners evidence in the trial court consisted of articles from news outlets nationwide that reported on the general investigation of the compounding pharmacy industry aimed at rooting out potential fraud. Given this general industry investigation and the almost nine months that passed between Petitioners' publications and execution of a warrant for Respondents' offices, one strong factual inference is that the purpose of the September search warrant was issued in furtherance of the general investigation, not a targeted investigation of Respondents or anyone else listed in the September Search Warrant.

## II. CONCLUSION AND PRAYER

The court records and facts Petitioners request judicial notice of are outside the appellate record and were not considered by the trial court. Under the deadlines

and procedures established by the TCPA, the trial court could never have considered the court records. Even if the records were available before the TCPA deadlines had passed, the "facts" Petitioners request notice of do not meet the standard for judicial notice as are pleading allegations of an entity not party to this case. Finally, Petitioners' own briefing admits that the status of any investigation or subsequent searches of Respondents does not affect the issues raised in this matter. Respondents pray this Court deny Petitioners' Motion for Judicial Notice of Court Filings and pray for other relief to which they may be entitled.

Respectfully submitted,

_____
Robert J. Myers, SBN 14765380
John J. Shaw, SBN 24079312
MYERS ✳ LAW
2525 Ridgmar Blvd., Ste. 150
Fort Worth, TX 76116
Tel: (817) 731-2500
Fax: (817) 731-2501
rmyers@myerslawtexas.com
jshaw@myerslawtexas.com

Counsel for Respondents

11

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 2,509 words, excluding the portions excluded by Texas Rule of Appellate Procedure 9.4(i)(1). It was prepared in Microsoft Word using 14-point typeface for body text and 12-point typeface for footnotes. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
John J. Shaw

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 21, 2017, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic case filing system.

_____
John J. Shaw