

## NUMBER 13-19-00034-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**DONALD CEGLAR,**                                                          **Appellant,**

**v.**

**CHRIST'S HARBOR CHURCH,**
**GARY STONE, ELVIN GRAYSON**
**AND GARY SNYDER,**                                                    **Appellees.**

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Justice Longoria**

Appellant Donald Ceglar, along with twenty-five members of the Christ's Harbor Church (the Church), petitioned the trial court for a declaratory judgment regarding the Church's obligation to hold a leadership meeting pursuant to the Church's by-laws. The

Church, Gary Stone, Elvin Grayson, and Gary Snyder (collectively, appellees) filed a plea to the jurisdiction. The trial court granted the plea. By two issues, which we construe as one, Ceglar argues that the trial court erred in granting appellees' plea to the jurisdiction. We affirm.

## I. BACKGROUND

On February 2, 2018, forty-nine individuals submitted a signed petition (the petition) to the appellees. These forty-nine individuals all claimed to be members of the Church. The petition asserted that two female members of the Church accused Stone, the Church's newly hired Senior Pastor, of inappropriate behavior and misconduct. The petition requested that the Church leadership hold a meeting, pursuant to the Church's by-laws, to determine if Stone's employment should be terminated. Appellees did not respond to the petition.

On June 5, 2018, Ceglar and twenty-five members of the Church filed suit in the trial court for a declaratory judgment.[1] The suit sought the following relief:

> In the present case, Plaintiffs are asking that this Court declare their rights under the established Church Constitution and by-Laws and order the Church, Elders, and Pastor to hold a meeting pursuant to said by-laws. Said meeting shall be for the purposes of holding a vote as to whether or not to declare the office of the Pastor vacant. The Plaintiffs stress at this juncture that they are not asking this Court to interfere in ecclesiastical matters; they are not asking this Court to determine the fate of Pastor Stone or to determine whether he should be fired or disciplined in any manner. The only action that the Plaintiffs seek is that a meeting be called and held pursuant to the by-laws. What happens at that meeting and the decision as to whether to declare the office of the Pastor vacant shall be entirely up to the members of the church, as it should be.

---

[1] Ceglar is the only member that appealed the trial court's granting of the plea to the jurisdiction.

2

Appellees answered and filed a plea to the jurisdiction, claiming that the trial court was without authority because "this case involves ecclesiastical matters that the courts are prohibited from considering" and "[r]eligious controversies are not the proper subject of civil-court inquiry."

On August 8, 2018, the trial court held a hearing on the plea to the jurisdiction. The membership secretary of the Church from 2012 to early 2018, Brooke Townsend, testified that all of the names on the petition were members according to the membership computer program that they maintain. Appellees asserted that most of the individuals named on the petition were not "members." One of the Elders of the Church testified that he did not recognize many names on the membership list, and he decided that if an individual goes ninety days without praying, supporting, and devoting energies to the Church, that individual would no longer be considered a "member." Using these criteria, appellees purged the membership records and accordingly asserted that most of the names on the petition were not active members.

At the hearing, appellees additionally argued, for the first time, that the petition was invalid according to the by-laws of the Church. More specifically, appellees asserted that one becomes a member of the Church by making a "profession of faith in the Lord Jesus Christ and a pledge to support [the Church] with prayers, attendance, giving, and service." And under the Church's by-laws, a petition to demand a special meeting to make the Pastor's position vacant requires signatures from twenty-five percent of members.[2] Thus, appellees argued that the trial court was not allowed to determine the validity of the

---

[2] We note that the appellees consistently cite the by-laws as requiring a petition signed by at least twenty-five percent of the Church members to demand a special meeting. However, Section 108 of the Church's by-laws very clearly states that the petition only requires fifteen percent of the Church members.

petition because doing so would require the court to intrude on matters of ecclesiastical nature—specifically, it would require a determination of who was actually a member of the Church.

The trial court granted appellees' plea to the jurisdiction. This appeal ensued.

## II. ECCLESIASTICAL ABSTENTION DOCTRINE

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Hidalgo County v. Dyer*, 358 S.W.3d 698, 703 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.). When a plea to the jurisdiction challenges jurisdictional facts, we consider the facts alleged by the plaintiff and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties" to determine whether the plaintiff has affirmatively demonstrated the court's jurisdiction to hear the case. *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001). The process of deciding whether jurisdictional facts have been affirmatively pleaded is similar to a summary judgment proceeding: if the evidence does not raise a genuine issue of fact regarding the jurisdictional issue, then the plea to the jurisdiction should be granted. *See Miranda*, 133 S.W.3d at 228.

The First Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of Religion, or prohibiting the free exercise thereof." U.S. Const. amend. I, XIV. "This provision mandates that government and religion remain separate, forbidding the government from interfering with the rights of hierarchical religious bodies to either establish their own internal rules and regulations or create tribunals for adjudicating

4

disputes over religious matters." *Lacy v. Bassett*, 132 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see Torralva v. Peloquin*, 399 S.W.3d 690, 695 (Tex. App.—Corpus Christi 2013, pet. denied); *Williams v. Gleason*, 26 S.W.3d 54, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–09, 724–25 (1976)). Following this constitutional mandate, under the ecclesiastical abstention doctrine, civil courts may not intrude into a church's governance of religious or ecclesiastical matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality. *See Torralva*, 399 S.W.3d at 695; *Williams*, 26 S.W.3d at 58; *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.); *Tran*, 934 S.W.2d at 743.

"Nevertheless, acknowledging that churches, their congregations, and hierarchy exist and function within the civil community, they can be as amenable to rules governing civil, contract, or property rights as any other societal entity." *Lacy*, 132 S.W.3d at 123; *Dean*, 994 S.W.2d at 395 ("[C]ourts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from church controversy."); *Tran*, 934 S.W.2d at 743. Therefore, a state may adopt an approach, including neutral principles of law, for resolving church disputes that do not involve consideration of doctrinal matters. *Hawkins v. Friendship Missionary Baptist Church*, 69 S.W.3d 756, 758–59 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Jones v. Wolf*, 443 U.S. 595, 604 (1979)). Under such an approach, a court may interpret church documents in purely secular terms without relying on religious precepts in resolving the conflict. *Id.* If an issue

5

cannot be determined without resolving a religious controversy, a court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. *Id.* Often, however, the difficulty arises in determining whether a particular dispute is "ecclesiastical" or simply a civil law controversy in which church officials happen to be involved. *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Tran,* 934 S.W.2d at 743. To resolve the question, courts must look to the "substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Tran*, 934 S.W.2d at 743*; see Williams,* 26 S.W.3d at 59 (stating the substance and effect of plaintiff's petition must be examined to determine its "ecclesiastical implication").

## B. Analysis

Ceglar argues that the trial court erred by granting appellees' plea to the jurisdiction. More specifically, Ceglar asserts that there are unresolved issues of fact that could be resolved by a trial on the merits without intruding into matters of ecclesiastical concern. However, the appellees contend that it would be impossible to grant Ceglar's requested relief based solely on neutral principles of law. We agree with the appellees.

Ceglar contends that the trial court has jurisdiction to hear this case because courts are allowed to intervene in nonreligious church matters. It is true that a court may interpret church documents or by-laws if doing so does not require the consideration of doctrinal matters. *Hawkins*, 69 S.W.3d at 758–59. For example, in *Shannon*, the plaintiff Shannon had signed a separation agreement with a church. 476 S.W.3d at 624. Shannon brought suit against the church for "disparaging" her, but the church filed a plea to the jurisdiction. *Id.* On appeal, the court decided that the issue of whether Shannon had been

6

"disparaged" by the church could be resolved in secular terms without relying on any religious precepts or interpreting the Church's by-laws. *Id.*

In *Lacy*, the plaintiff made a written request, pursuant to the Texas Non-Profit Corporation Act (the Act), to his church to examine and copy some of the church's financial records. 132 S.W.3d at 123. The church refused to comply with the request. *Id.* Lacy filed a declaratory judgment action against the church, but the trial court granted the church's plea to the jurisdiction. *Id.* On appeal, the court of appeals reversed, holding that the church had incorporated under the Act and was thus "amenable to the provisions of that statute." *Id.* Under the plain language of the Act, Lacy was clearly allowed access to the Church's financial records. *Id.* Thus, "Lacy's request to review the Church's records merely requires the trial court to enforce a neutral principle of law." *Id.* at 126.

*Shannon* and *Lacy* are distinguishable from the present case because the trial court would not be able to grant the declaratory relief that Ceglar seeks without resorting to religious doctrine. According to the Church's by-laws, to call a special meeting, Ceglar needed a petition signed by at least fifteen percent of the Church members. The petition contained forty-nine signatures. This may appear to be a simple mathematical problem that the court could solve in purely secular terms, but to determine if Ceglar had fifteen percent of the necessary signatures, the court would need to know how many total members there are and how many of the forty-nine were considered members. Snyder testified at the hearing on the plea to the jurisdiction that there were multiple membership lists kept by the Church because they were not maintained very well. According to one list, the Church had approximately 400 members, but according to another list, the Church may have had 700 members. Ceglar's only witness at the hearing was Townsend; she

7

testified that when she started working at the Church, the membership list contained 600 names. Townsend asserted that all of the names on the petition were on the membership lists of the Church, but she did not indicate how many members the Church currently has.

More importantly, section 102 of the Church's by-laws sets forth four ways to gain membership in the Church: (1) provide a profession of faith; (2) transfer by letter from another church of like faith and order; (3) statement claiming membership in a church of like faith and order provided that neither the applicant or the Church can secure a letter; and (4) reinstatement for people previously excluded from membership, provided they offer a declaration of repentance. Thus, determining the Church's total membership would require inquiring into whether individuals have provided a profession of faith, which cannot be decided on neutral principles of law. *See Watson v. Jones*, 80 U.S. 679, 728–29 (1872) (concluding courts "cannot decide who ought to be members of the church"); *In re St. Thomas High Sch.*, 495 S.W.3d 500, 510 (Tex. App.—Houston [14th Dist.] 2016) (orig. proceeding).

In summary, this is not a case like *Shannon* and *Lacy* where the court can resolve the legal matter on purely secular terms. *See Shannon*, 476 S.W.3d at 624; *Lacy*, 132 S.W.3d at 123. Rather, determining whether the petition met the fifteen percent threshold would ultimately require the court to determine who qualified as a member of the Church. Thus, this dispute ultimately concerns doctrinal matters in which the court may not intervene. *See Watson*, 80 U.S. at 728–29; *Lacy*, 132 S.W.3d at 123. The trial court did not err by granting appellees' plea to the jurisdiction. We overrule Ceglar's sole issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed the
27th day of February, 2020.