Dorothy **DEAN**, Carl Stratford, and Jack Marsh, Appellants,

v.

Harold D. **ALFORD**, Pastor New Jerusalem Institutional Baptist Church, Alfred Harris and Robert King, Appellees.

No. 2–98–327–CV.

Court of Appeals of Texas, Fort Worth.

June 10, 1999.

William C. Odeneal, Odeneal & Odeneal, Dallas, for appellants.

Scott E. Kurth, Desoto, for appellees.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This appeal arises from an intercongregational dispute of the New Jerusalem Institutional Baptist Church of Dallas. Appellants Dorothy Dean, Carl Stratford, and Jack Marsh represent a portion of the membership that sought removal of appellee Harold D. Alford as pastor.

Because the issue presented to the trial court was purely ecclesiastical in nature, the trial court was without jurisdiction to resolve the controversy. Therefore, we vacate the trial court's judgment and dismiss the case.

## BACKGROUND

On January 13, 1998, a congregational vote, in violation of church by-laws, but with the consent of Alford, was held to determine whether Alford should be retained as pastor. During this vote, at least one physical altercation occurred between the two factions. In the end, the congregation voted to retain Alford. In light of the altercation, appellants considered the vote tainted.

Three days later, appellants filed suit seeking injunctive relief against appellees. They requested an accounting of church funds and requested that Alford, and his agents, be enjoined from writing checks on the church account. On January 20, the court granted a temporary injunction. On February 3, appellees filed an answer and sought dissolution of the injunction. On February 17, a second vote was taken on the steps of the church. In that vote, Alford was removed as pastor by a vote of 87 to 1. Afterwards, appellants amended their petition to include declaratory relief as to Alford's removal. In the new petition, appellants sought the identical injunctive relief as in their original petition, and requested a permanent injunction to prevent Alford or his agents from entering the pulpit and taking part in the administration of church affairs.

After finding a significant level of discord within the congregation and with the church unable to resolve the conflict internally, on March 3, 1998, the trial court ordered a new vote. In its order, the court, pursuant to the church's by-laws, outlined the policies and procedures that were to be followed in conducting the new vote. The trial court also sanctioned the use of constables to gather and tally the votes.

Between the March 3 order and the July 10 filing of appellant's motion for a new trial, the clerk's record reflects that the trial court entertained seven motions, held a hearing on one of the motions, and amended or issued new orders on four occasions. Among the matters presented for the trial court's consideration were (1) whether proper persons were notified and present at a meeting of the deacons, (2) determination of whether balloting should be closed, (3) proper balloting structure and language, and (4) whether, and under what circumstances, proxy votes would be counted in the election.

## DISCUSSION

We will only address appellants' fourth point because it is dispositive. In that point, appellants argue the trial court erred by imposing its judicial authority to interfere with a purely ecclesiastical or administrative matter of the church. In response, appellees argue that appellants have waived any right to complain of the trial court's actions by participating in the court-ordered vote. We disagree. Appellants' complaint is that the trial court lacked jurisdiction to act; thus, its judgment and actions were void. See Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990); Cook v. Cameron, 733 S.W.2d 137, 140 (Tex.1987). The issue of subject matter jurisdiction may not be waived by the parties and may be raised at any time. See City of Dallas v. GTE Southwest, Inc., 980 S.W.2d 928, 931 (Tex.App.—Fort Worth 1998, pet. filed). Therefore, we will

address appellants' jurisdictional complaint.

■ It is without dispute that the First Amendment prohibits civil courts from intruding into the church's governance of "religious" or "ecclesiastical" matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–09, 724–25, 96 S.Ct. 2372, 2380, 2387–88, 49 L.Ed.2d 151 (1976); *Libhart v. Copeland*, 949 S.W.2d 783, 793 (Tex.App.—Waco 1997, no pet.); *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex.App.—Houston [1 st Dist.] 1996, no writ).

■ Notwithstanding the First Amendment's proscription, courts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy. *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 732–33, 20 L.Ed. 666 (1871) (recognizing that churches, their congregations and hierarchy exist and function within the civil community, and thus are amenable as other societal entities to rules governing property rights, torts and criminal conduct); *Libhart*, 949 S.W.2d at 793; *Lide v. Miller*, 573 S.W.2d 614, 615 (Tex. Civ.App.—Texarkana 1978, no writ). Neutral principles of law must be applied to decide such matters so that courts do not violate the constitutional prohibition against government established religion. *See Libhart*, 949 S.W.2d at 793; *Presbytery of the Covenant v. First Presbyterian Church of Paris, Inc.*, 552 S.W.2d 865, 870 (Tex.Civ.App.—Texarkana 1977, no writ). If the conflict cannot be resolved solely by the application of neutral principles of law, we must defer to the decision made by the highest authority of the church from which

the question or controversy arises.[1] *See Patterson v. Southwestern Baptist Theological Seminary*, 858 S.W.2d 602, 605–06 (Tex.App.—Fort Worth 1993, no writ); *Waters v. Hargest*, 593 S.W.2d 364, 365 (Tex.Civ.App.—Texarkana 1979, no writ).

■ The difficulty lies in determining whether a particular dispute is "ecclesiastical" or simply a civil law controversy in which church officials happen to be involved. *See Tran*, 934 S.W.2d at 743. "The relationships between an organized church and its ministers is its lifeblood." *Id.* The minister is the primary agent by which a church seeks to fulfill its purpose. Matters concerning this relationship must be recognized as of prime ecclesiastical concern. *See id.; Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex.App.—Austin 1995, writ denied), *cert. denied*, 517 U.S. 1134, 116 S.Ct. 1419, 134 L.Ed.2d 543 (1996) (quoting *McClure v. Salvation Army*, 460 F.2d 553, 558–59 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972)).

■ As a result, we must conclude that the issue of a pastor's ouster is ecclesiastical in nature. Courts may not attempt to right wrongs related to the hiring, firing, discipline, or administration of clergy. *See Tran*, 934 S.W.2d at 743. While such wrongs may exist and be severe, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities which may result from its liberal application. *See id.* Consequently, the trial court was limited to a review of the facts to determine whether it had jurisdiction to proceed. Those facts demonstrate that it did not. Accordingly, the only proper ac-

---

1. The evidence shows that the church had a congregational form of church government as opposed to a hierarchical system. *See Watson*, 80 U.S. (13 Wall.) at 722–23. Where a local congregation is independent of any other ecclesiastical association and owes no obligation to any higher authority, it totally controls its own destiny. *See Presbytery of the Covenant*, 552 S.W.2d at 870. In churches with a congregational form of government, ultimate decision-making authority vests in the members. *See First Baptist Church v. Fort*, 93 Tex. 215, 227, 54 S.W. 892, 896 (1900).

tion for the trial court was to dismiss the case. While we are cognizant that dismissal leaves the congregation of the New Jerusalem Institutional Baptist Church without a judicial determination of whether they have properly removed Alford, such action is proper because it leaves the decision of who will lead the congregation with the congregation. We sustain appellants' fourth point.

## CONCLUSION

Because this was a purely ecclesiastical matter, the trial court was required to dismiss the action. As a consequence, we vacate the trial court's judgment and dismiss the case.