COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-425-CV

 

 

GARRY SMITH, JOEL STRICKLIN,                                         APPELLANTS

RICHARD
R. BOYKIN, AND RONNIE L. BAKER

 

                                                   V.

 

NORTH TEXAS DISTRICT COUNCIL OF                                    APPELLEES

THE
ASSEMBLIES OF GOD AND HOUSE OF GRACE

 

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








This appeal arises from an
intracongregational dispute among members of the House of Grace church in Fort
Worth.  Appellants Garry Smith, Joel
Stricklen, Richard R. Boykin, and Ronnie L. Baker and other church members
unsuccessfully sought a division of House of Grace=s assets.  Because the issue
presented to the trial court was purely ecclesiastical in nature, the trial
court was without jurisdiction to resolve the controversy.  Accordingly, we affirm the trial court=s order dismissing the case for want of jurisdiction.  

                                                 Facts

In 1999, Father=s House and Christian Temple, two Assembly of God churches, merged to
form House of Grace.  Both churches
brought property and members to the House of Grace, and Smith, the former
pastor of Christian Temple, became the congregation=s new pastor.  On March 12,
2003, after determining that there were ongoing disputes and disharmony amongst
House of Grace members, the North Texas District Council of the Assemblies of
God (ADistrict Council@) intervened
in church management and declared that House of Grace was under district
affiliation.  While under district
affiliation, House of Grace was subject to the District Council=s constitution, bylaws, and management board.  








On April 29, 2003, the
District Council issued a six-page investigatory report discussing House of
Grace=s internal problems and presenting two major recommendations for the
congregation=s
future.  Under AFuture 1,@ House of
Grace would remain a congregation and Acontinue to worship in the present facilities under the direction of a
pastor and board to be appointed by the North Fort Worth Sectional Committee in
consultation with the congregation.@  Under AFuture 2,@ the
alternative option, the church would split, and part of the church members
would form a new congregation that would be Aled by Pastor Garry Smith and a board to be appointed by the North
Fort Worth Sectional Committee in consultation with the congregation.@

The District Council
organized and gave notice of a House of Grace membership meeting where the congregation
would vote on the two AFutures.@   Originally, the notice stated
that only a majority of the members= votes was necessary to implement one of the Futures.  However, on May 1, 2003, the District Council=s Executive Committee changed the vote requirement to a two-thirds
majority and provided due notice of this change to the congregation.

On May 6, 2003, the
congregation approved Future 2 by a simple majority vote but did not meet the
two-thirds vote requirement.  After the
vote, the District Council immediately implemented Future 1, which did not prevent
any House of Grace congregation member from leaving the church, but did prevent
a division of House of Grace=s property and assets.  








Seventy-three individuals,
mostly former Christian Temple members upset that House of Grace would retain
Christian Temple=s
approximately $2.4 million in property and assets under Future 1, appealed the
District Council=s decision
on May 19, 2003.  On May 29, 2003, the
District Council informed the members that they had no right to appeal because
they were under district affiliate status during the vote.  Subsequently, the congregation split into two
factionsCHouse of Grace and the newly-formed City Gate Church.  

Proceedings

On March 11, 2005, appellants
sued House of Grace and the District Council (Aappellees@) seeking a
division of House of Grace=s assets, or in the alternative, damages.  Appellants asserted in their original
petition that appellees had failed to follow the church constitution, bylaws,
and rules of procedure.  In response,
appellees filed motions to dismiss claiming that the trial court lacked subject
matter jurisdiction.  The court granted
these motions.

Shortly thereafter,
appellants filed a motion for new trial alleging that they did not receive
proper notice of the hearing on the motion and that they had a meritorious
defense.  The trial court granted the
motion for new trial on July 21, 2005.

On September 1, 2005, the
trial court held a second hearing on the motions to dismiss for lack of subject
matter jurisdiction and subsequently granted them.  Among the matters presented for the trial
court=s consideration were (1) what vote percentage was necessary under the
District Council=s bylaws and
constitution to select a AFuture,@ (2) whether 16-year-old congregation members should have been allowed
to vote, and (3) whether  notice was
properly given to House of Grace members about the vote.   








                                             Discussion

In one point, appellants
complain that the trial court erred in granting appellees= motions to dismiss because appellants= claims do not involve ecclesiastical considerations or a religious
controversy.  Conversely, appellees argue
that appellants= claims are
ecclesiastical in nature because they ask the trial court to determine matters
involving clergy, church discipline, and ecclesiastical governance.  We agree.

It is without dispute that
the First Amendment prohibits civil courts from intruding into churches= governance of Areligious@ or Aecclesiastical@ matters such as theological controversy, church discipline,
ecclesiastical government, or the conformity of members to standards of
morality.  See Serbian E. Orthodox
Diocese v. Milivojevich, 426 U.S. 696, 708-09, 724-25, 96 S. Ct. 2372,
2380, 2387-88 (1976); Dean v. Alford, 994 S.W.2d 392, 395 (Tex. App.CFort Worth 1999, no pet.); Libhart v. Copeland, 949 S.W.2d 783,
793 (Tex. App.CWaco 1997,
no pet.); Tran v. Fiorenza, 934 S.W.2d 740, 743 (Tex. App.CHouston [1st Dist.] 1996, no writ). 









Notwithstanding the First
Amendment=s
proscription, courts do have jurisdiction to review matters involving civil,
contract, or property rights even though they stem from a church
controversy.  See Watson v. Jones,
80 U.S. (13 Wall.) 679, 732-33, 20 L. Ed. 666 (1871) (recognizing that
churches, their congregations, and their hierarchies exist and function within
the civil community, and thus are as amenable as other societal entities to
rules governing property rights, torts, and criminal conduct); Dean, 994
S.W.2d at 395; Libhart, 949 S.W.2d at 793.  Neutral principles of law must be applied to
decide such matters so that courts do not violate the constitutional
prohibition against government established religion.  See Dean, 994 S.W.2d at 395;
Libhart, 949 S.W.2d at 793.  But if
the conflict cannot be resolved solely by the application of neutral principles
of law, we must defer to the decision made by the highest authority of the
church from which the question or controversy arises.  Dean, 994 S.W.2d at 395; see
Patterson v. Sw. Baptist Theological Seminary, 858 S.W.2d 602, 605B06 (Tex. App.CFort Worth
1993, no writ).

The difficulty lies in
determining whether a particular dispute is ecclesiastical or simply a civil
law controversy in which church officials happen to be involved.  Dean, 994 S.W.2d at 395; see Tran,
934 S.W.2d at 743.   In determining
whether a suit is ecclesiastical or involves issues outside of the exemption,
the court must examine the substance and effect of the plaintiff=s petition.  Williams v.
Gleason, 26 S.W.3d 54, 59 (Tex. App.CHouston [14th Dist.] 2000, pet. denied), cert. denied, 533 U.S.
902 (2202); Tran, 934 S.W.2d at 743. 

 













In their original petition,
appellants asked the trial court to declare that the District Council did not
follow church bylaws when conducting the AFuture@ vote, to
divide House of Grace=s assets
between the two congregations, and, in the alternative, to award damages to
appellants to compensate for the result of the vote.  Matters involving the interpretation of
church bylaws and constitutions, the relationship between an organized church
and its minister, and the division of church assets are all ecclesiastical
concerns.  See Milivojevich, 426
U.S. at 708-09, 724-25, 96 S. Ct. at 2380, 2387-88; Gleason, 26 S.W.3d
at 59; Dean, 994 S.W.2d at 395; Tran, 934 S.W.2d at 743.  Therefore, appellant=s requests are all matters which are ecclesiastical in nature.  See Milivojevich, 426 U.S. at 708-09,
724-25, 96 S. Ct. at 2380, 2387-88; Gleason, 26 S.W.3d at 59; Dean,
994 S.W.2d at 395; Tran, 934 S.W.2d at 743.  While wrongs may exist and be severe, and
although a church=s
administration may be inadequate to provide a remedy, the preservation of the
free exercise of religion is deemed so important a principle that it
overshadows the inequities which may result from its liberal application.  Dean, 994 S.W.2d at 395.  Consequently, the trial court was limited to
a review of the facts to determine whether it had jurisdiction to proceed.  These facts demonstrate that it did not.  Because this was a purely ecclesiastical
matter, the trial court properly granted appellees= motions to dismiss for lack of subject matter jurisdiction.  Accordingly, we overrule appellants= sole point.

Having overruled appellants= sole point, we affirm the
trial court=s
order dismissing the case for want of jurisdiction.  

 

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
A:  LIVINGSTON, HOLMAN, and WALKER, JJ.

 

DELIVERED:
November 30, 2006











[1]See Tex. R. App. P. 47.4.