SMITH V. ASSEMBLIES OF GOD

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-425-CV

GARRY SMITH, JOEL STRICKLIN, APPELLANTS

RICHARD R. BOYKIN, AND RONNIE L. BAKER

V.

NORTH TEXAS DISTRICT COUNCIL OF APPELLEES

THE ASSEMBLIES OF GOD AND HOUSE OF GRACE

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This appeal arises from an intracongregational dispute among members of the House of Grace church in Fort Worth.  Appellants Garry Smith, Joel Stricklen, Richard R. Boykin, and Ronnie L. Baker and other church members unsuccessfully sought a division of House of Grace’s assets.  Because the issue presented to the trial court was purely ecclesiastical in nature, the trial court was without jurisdiction to resolve the controversy.  Accordingly, we affirm the trial court’s order dismissing the case for want of jurisdiction.  

Facts

In 1999, Father’s House and Christian Temple, two Assembly of God churches, merged to form House of Grace.  Both churches brought property and members to the House of Grace, and Smith, the former pastor of Christian Temple, became the congregation’s new pastor.  On March 12, 2003, after determining that there were ongoing disputes and disharmony amongst House of Grace members, the North Texas District Council of the Assemblies of God (“District Council”) intervened in church management and declared that House of Grace was under district affiliation.  While under district affiliation, House of Grace was subject to the District Council’s constitution, bylaws, and management board.  

On April 29, 2003, the District Council issued a six-page investigatory report discussing House of Grace’s internal problems and presenting two major recommendations for the congregation’s future.  Under “Future 1,” House of Grace would remain a congregation and “continue to worship in the present facilities under the direction of a pastor and board to be appointed by the North Fort Worth Sectional Committee in consultation with the congregation.”  Under “Future 2,” the alternative option, the church would split, and part of the church members would form a new congregation that would be “led by Pastor Garry Smith and a board to be appointed by the North Fort Worth Sectional Committee in consultation with the congregation.”

The District Council organized and gave notice of a House of Grace membership meeting where the congregation would vote on the two “Futures.”   Originally, the notice stated that only a majority of the members’ votes was necessary to implement one of the Futures.  However, on May 1, 2003, the District Council’s Executive Committee changed the vote requirement to a two-thirds majority and provided due notice of this change to the congregation.

On May 6, 2003, the congregation approved Future 2 by a simple majority vote but did not meet the two-thirds vote requirement.  After the vote, the District Council immediately implemented Future 1, which did not prevent any House of Grace congregation member from leaving the church, but did prevent a division of House of Grace’s property and assets.  

Seventy-three individuals, mostly former Christian Temple members upset that House of Grace would retain Christian Temple’s approximately $2.4 million in property and assets under Future 1, appealed the District Council’s decision on May 19, 2003.  On May 29, 2003, the District Council informed the members that they had no right to appeal because they were under district affiliate status during the vote.  Subsequently, the congregation split into two factions—House of Grace and the newly-formed City Gate Church.  

Proceedings

On March 11, 2005, appellants sued House of Grace and the District Council (“appellees”) seeking a division of House of Grace’s assets, or in the alternative, damages.  Appellants asserted in their original petition that appellees had failed to follow the church constitution, bylaws, and rules of procedure.  In response, appellees filed motions to dismiss claiming that the trial court lacked subject matter jurisdiction.  The court granted these motions.

Shortly thereafter, appellants filed a motion for new trial alleging that they did not receive proper notice of the hearing on the motion and that they had a meritorious defense.  The trial court granted the motion for new trial on July 21, 2005.

On September 1, 2005, the trial court held a second hearing on the motions to dismiss for lack of subject matter jurisdiction and subsequently granted them.  Among the matters presented for the trial court’s consideration were (1) what vote percentage was necessary under the District Council’s bylaws and constitution to select a “Future,” (2) whether 16-year-old congregation members should have been allowed to vote, and (3) whether  notice was properly given to House of Grace members about the vote.   

Discussion

In one point, appellants complain that the trial court erred in granting appellees’ motions to dismiss because appellants’ claims do not involve ecclesiastical considerations or a religious controversy.  Conversely, appellees argue that appellants’ claims are ecclesiastical in nature because they ask the trial court to determine matters involving clergy, church discipline, and ecclesiastical governance.  We agree.

It is without dispute that the First Amendment prohibits civil courts from intruding into churches’ governance of “religious” or “ecclesiastical” matters such as theological controversy, church discipline, ecclesiastical government, or the conformity of members to standards of morality.
  See Serbian E. Orthodox Diocese v. Milivojevich
, 426 U.S. 696, 708-09, 724-25, 96 S. Ct. 2372, 2380, 2387-88 (1976); 
Dean v. Alford
, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.); 
Libhart v. Copeland
, 949 S.W.2d 783, 793 (Tex. App.—Waco 1997, no pet.);
 Tran v. Fiorenza
, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ).  

Notwithstanding the First Amendment’s proscription, courts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy.  
See Watson v. Jones
, 80 U.S. (13 Wall.) 679, 732-33, 20 L. Ed. 666 (1871) (recognizing that churches, their congregations, and their hierarchies exist and function within the civil community, and thus are as amenable as other societal entities to rules governing property rights, torts, and criminal conduct); 
Dean
, 994 S.W.2d at 395; 
Libhart
, 949 S.W.2d at 793.  Neutral principles of law must be applied to decide such matters so that courts do not violate the constitutional prohibition against government established religion.  
See Dean
, 994 S.W.2d at 395
; Libhart
, 949 S.W.2d at 793.  But if the conflict cannot be resolved solely by the application of neutral principles of law, we must defer to the decision made by the highest authority of the church from which the question or controversy arises.  
Dean
, 994 S.W.2d at 395; 
see Patterson v. Sw. Baptist Theological Seminary
, 858 S.W.2d 602, 605–06 (Tex. App.—Fort Worth 1993, no writ).

The difficulty lies in determining whether a particular dispute is ecclesiastical or simply a civil law controversy in which church officials happen to be involved.  
Dean
, 994 S.W.2d at 395; 
see Tran
, 934 S.W.2d at 743.   In determining whether a suit is ecclesiastical or involves issues outside of the exemption, the court must examine the substance and effect of the plaintiff’s petition.  
Williams v. Gleason
, 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), 
cert. denied
, 533 U.S. 902 (2202); 
Tran
, 934 S.W.2d at 743. 

In their original petition, appellants asked the trial court to declare that the District Council did not follow church bylaws when conducting the “Future” vote, to divide House of Grace’s assets between the two congregations, and, in the alternative, to award damages to appellants to compensate for the result of the vote.  Matters involving the interpretation of church bylaws and constitutions, the relationship between an organized church and its minister, and the division of church assets are all ecclesiastical concerns.  
See Milivojevich
, 426 U.S. at 708-09, 724-25, 96 S. Ct. at 2380, 2387-88;
 Gleason
, 26 S.W.3d at 59; 
Dean
, 994 S.W.2d at 395; 
Tran
, 934 S.W.2d at 743.  Therefore, appellant’s requests are all matters which are ecclesiastical in nature.  
See Milivojevich
, 426 U.S. at 708-09, 724-25, 96 S. Ct. at 2380, 2387-88;
 Gleason
, 26 S.W.3d at 59; 
Dean
, 994 S.W.2d at 395; 
Tran
, 934 S.W.2d at 743.  While wrongs may exist and be severe, and although a church’s administration may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle that it overshadows the inequities which may result from its liberal application.  
Dean
, 994 S.W.2d at 395.  Consequently, the trial court was limited to a review of the facts to determine whether it had jurisdiction to proceed.  These facts demonstrate that it did not.  Because this was a purely ecclesiastical matter, the trial court properly granted appellees’ motions to dismiss for lack of subject matter jurisdiction.  Accordingly, we overrule appellants’ sole point.

Having overruled appellants’ sole point, we affirm the trial court’s order dismissing the case for want of jurisdiction.  

TERRIE LIVINGSTON

JUSTICE

PANEL A:  LIVINGSTON, HOLMAN, and WALKER, JJ.

DELIVERED: November 30, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.