

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00220-CV

IN RE JORGE TORRES AND TEMPLO BAUTISTA DAMASCO
D/B/A TEMPLO DAMASCO, RELATORS

ORIGINAL PROCEEDING FOR WRIT OF MANDAMUS

July 30, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Jorge Torres and Templo Bautista Damasco d/b/a Templo Damasco, Relators, petition this Court for a writ of mandamus directing the Honorable Gordon H. Green, 287th Judicial District Court (trial court), "to vacate his order [granting new trial] dated May 24, 2019, and reinstate his Order Granting Defendant's Plea to the Jurisdiction, dismissing in full the underlying lawsuit for want of jurisdiction." We conditionally grant the writ.

The matter before us arose from an "Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction" filed by Esperanza Herrera and Alfredo Ramirez. They sought injunctive relief barring Torres and Templo Bautista and their agents and representatives from:

directly or indirectly taking any actions on behalf of the Church [i.e., Templo Bautista], and instead allow for the Church membership, in accordance with the Church's past policies and procedures and Constitution and after a full vote of the membership to permanently elect its preacher, committees and guide the day to day operations of the Church (to include, if such is the decision of the members of the Church, Mr. Jorge Torres).

Herrera and Ramirez moved for such relief after accusing Torres and other parishioners aligned with him of generally 1) usurping authority and the pulpit within the church contrary to the unincorporated association's "constitution or policies and practices," 2) ousting other parishioners who held offices with the church, including the pastor, and 3) barring the return of those ousted by inducing local police to cite them for criminal trespass. Torres and Templo Bautista filed their plea to the trial court's jurisdiction, contending that the "ecclesiastical abstention doctrine" denied the trial court subject-matter jurisdiction over the proceeding. The trial court originally agreed with the movants but reconsidered its decision when Ramirez and Herrera moved for a new trial. The latter motion was granted, resulting in the petition now before us.

Mandamus is an extraordinary remedy available only in limited situations. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *In re Talley*, No. 07-15-00198-CV, 2015 Tex. App. LEXIS 6268, at *3–4 (Tex. App.—Amarillo June 22, 2015, orig. proceeding) (mem. op.). Its small umbrella, though, extends over jurisdictional disputes. *See, e.g.*, *In re Swart*, __ S.W.3d __, __, 2019 Tex. App. LEXIS 5732, at *6–7 (Tex. App.—Dallas July 9, 2019, orig. proceeding) (involving the existence of personal jurisdiction and stating that "[a]bsent mandamus review, jurisdictional and other like issues . . . would be rendered effectively meaningless); *In re Duddlesten*, No. 01-18-00561-CV, 2018 Tex. App. LEXIS 10649, at *11–12 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, orig. proceeding) (mem. op.) (holding that mandamus covers issues of

2

standing, which is a component of subject-matter jurisdiction); *In re St. Thomas High Sch.*, 495 S.W.3d 500, 506 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (involving subject matter jurisdiction). Within such disputes are allegations about the absence of jurisdiction based on religious-liberty grounds. *See Westbrook v. Penley*, 231 S.W.3d 389, 394–95 (Tex. 2007) (stating that a lack of jurisdiction may be raised through a plea to a court's jurisdiction when religious-liberty grounds form the basis of the jurisdictional challenge). And, such is the dispute here. Torres and Templo Bautista argue that the First Amendment of the United States Constitution and its concept of religious liberty obligated the trial court to grant the plea to the jurisdiction. We agree.

Per our Supreme Court, the neutral principles methodology controls our resolution of issues like that here. *See Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 596 (Tex. 2013). Under it, courts may decide non-ecclesiastical issues such as property ownership based on the same neutral principles of law applicable to other entities, while deferring to the decisions of religious entities on ecclesiastical and church polity matters. *Id.*

As previously mentioned, Ramirez and Herrera complain about the removal of a pastor, his replacement by another, the manner in which that was done, whether it complied with the church procedures, the removal of parishioners as church members, and the way Torres and those aligned with him came to govern their church.[1] And, though their complaints allude to church property and accounts, neither Ramirez nor Herrera

---

[1] The live pleading consists of requests for injunctive relief. However, our review of the document failed to uncover any averment of a cause of action from which such relief springs. This is problematic since issuance of injunctive relief is dependent upon the viability of an underlying cause of action. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011) (per curiam) (stating that permanent injunctive relief is available only if liability is established under a cause of action). Without alleging a cause of action, one has not satisfied the first step in obtaining injunctive relief.

purport to claim ownership of that property or those accounts. Rather, their concerns regarding the property relate to issues of stewardship. That is, they question whether those now operating the church, i.e., the Torres group, are caring for that property in a way they, i.e., the Herrera group, deem appropriate and beneficial for the church and its members.[2] Indeed, implicit within their dispute is the recognition that Templo still owns and has the right to possess church assets. Simply put, these allegations regarding church property are not those of the ilk deemed justiciable under the aforementioned neutral principles methodology. It extends to disputes about property ownership. *See Westbrook*, 231 S.W.3d at 399 (recognizing that the methodology extends to adjudicating disputes about ownership of church property without running afoul of First Amendment concerns, so long as resolution of ownership entails no inquiry into religious doctrine); *accord Masterson,* 422 S.W.3d at 596 (noting that within the realm of non-ecclesiastical issues lies the topic of "property ownership"). To reiterate something we said years ago when addressing another instance of congregational division, "[i]t is to be noticed that this is not one of those suits where the local congregation becomes divided and each division claims to have the right to the property to the exclusion of the other members." *African Methodist Episcopal Church v. Indep. African Episcopal Church*, 281 S.W.2d 758, 759

---

[2] Averments such as the following illustrate that they question whether those who gained control of the church are exercising proper stewardship over church property and not whether they or their compatriots actually own or are entitled to personally possess church property:

> Further, and as set out in Plaintiffs attached affidavits, every day that passes that Church members are banned from the Church represents not only a loss of relationships, community and spirituality, but further having zero access to the Church, the members are also concerned as to the safeguarding and stewardship of its assets (which include the sanctuary, the parsonage, office equipment such as computers and furniture, hymnals and other similar items, and the Church's cash on hand as well as bank accounts).

(Tex. Civ. App.—Amarillo 1955, writ ref'd n.r.e.).  Here, ownership is not in question, but rather the quality of stewardship being exercised over it.

In addition to questions of stewardship lies other issues deemed within the realm of ecclesiastical and polity disputes outside a civil court's jurisdiction.  They are categorized as internal matters of church governance with which civil courts must avoid intrusion.  *See Westbrook*, 231 S.W.3d at 397; *see also Retta v. Mekonen*, 338 S.W.3d 72, 76 (Tex. App.—Dallas 2011, no pet.) (quoting *Westbrook*, 231 S.W.3d at 397, 401–02.  Such matters include: 1) the right of a church to control its membership and decide who to admit or exclude,  *see Retta*, 338 S.W.3d at 76; 2) compliance with the bylaws or constitution of the church, *see id.*; *Smith v. N. Tex. Dist. Council of the Assemblies of God*, No. 02-05-425-CV, 2006 Tex. App. LEXIS 10244, at *7–8 (Tex. App.—Fort Worth 2006, no pet.) (mem. op.) (stating that matters regarding the interpretation of church bylaws and constitutions are ecclesiastical matters); 3) the removal of a pastor, *see Dean v. Alford*, 994 S.W.2d 392, 395–96 (Tex. App.—Fort Worth 1999, no pet.); 4) the legitimacy of an election by which church authorities were selected, *see Singh v. Sandhar*, 495 S.W.3d 482, 492–93 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that "the trial court did not have jurisdiction to order an election or choose which election was 'valid and controlling' based on a certain membership list"); and 5) who within the church may exercise authority to admit or exclude church members.  *See id.*

Comparing the complaints of Herrera and Ramirez to the foregoing categories of ecclesiastical matters leads us to the following.  The propriety of Torres's elevation to the pulpit, the propriety of his and his group's purported usurpation of control over the church, the propriety of Torres's stewardship over church property, the removal from the church

of members contesting his authority, and the removal of some other pastor are controversies insulated from judicial interference under the neutral principles methodology. Thus, the trial court lacked subject-matter jurisdiction to address or regulate them. So, in vacating its earlier decision to dismiss the action, it erred.

We conditionally grant Torres and Templo Bautista a writ of mandamus dependent upon the trial court failing to 1) vacate its decision granting a new trial and 2) reinstate its dismissal of the Herrera/Ramirez action within thirty days of this opinion.


Brian Quinn
Chief Justice