

# NUMBER 13-20-00012-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **IGLESIA PENTECOSTAL FILADELFIA, INC.,** | **Appellant,** |
| **v.** | |
| **JOSE I. RODRIGUEZ JR.,** | **Appellee.** |

## On appeal from the 357th District Court of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

Appellant Iglesia Pentecostal Filadelfia, Inc. (the Church) appeals the trial court's order dismissing its case for lack of jurisdiction based on the ecclesiastical abstention doctrine. By what we construe as two issues, the Church contends that (1) appellee Jose

I. Rodriguez, Jr. (Jose Jr.)[1] is precluded from presenting claims that substantively and effectively challenge his removal, and (2) because the trial court was precluded from adjudicating Jose Jr.'s claims, the trial court erred in dismissing the Church's claims involving disputes to property.

By three issues, cross-appellant Jose Jr. contends that the trial court (1) improperly denied his plea to the jurisdiction because it refused to allow him to submit evidence of the Church's fraudulent pleadings by limiting the subject matter of the final hearing to the issue of whether the Church followed corporate formalities in its operations, (2) erred in denying his motion to dismiss for lack of subject matter jurisdiction on the grounds of quo warranto, and (3) erroneously dismissed his third party petition against third party defendants.[2] We affirm.

## I.    BACKGROUND

The Church, a domestic non-profit corporation, was organized in 1987 for educational and religious purposes. Its articles of incorporation list, Jose I. Rodriguez (Jose Sr.), Catalina Rodriguez, and Hermelinda Rodriguez as the initial board of directors. They were the only signatories on the Church's Constitution, By-Laws, and Statement of Faith (the Bylaws). Over the years, the Church filed periodic reports with the secretary of state, and also filed franchise tax public information reports (the reports).[3] After 2006, Hermelinda and Jose Sr. did not appear on the reports, but Jose Jr. did. Additionally, in

---

[1] We refer to appellee/cross-appellant Jose I Rodriguez, Jr. and members of his family with the same last name by their first names to avoid confusion.

[2] Third-party defendants are Jose I. Rodriguez, Sr., Janie Nieves Garza, Hermelinda Rodriguez, Maria Ortiz, and Laura Croasdale. However, they are not parties to this appeal.

[3] We note that not all of the reports are in the record.

2014, Catalina filed a certificate of correction form, which notably requested the deletion of "Jose I. Rodriguez, . . . [a]s [p]resident."[4] There are also two sets of minutes in the record which are disputed.

Subsequently, on or about September 5, 2018, Jose Jr. was allegedly delivered a cease-and-desist and demand for return of funds letter, stating among other things that he has no right or interest in any church property, nor does he have any authority to act on the Church's behalf. Further, the letter advised him that he was "henceforth banned from all [c]hurch facilities and activities," and it demanded that he return all church property presently in his possession.

## II.    PROCEDURAL HISTORY

Approximately one week after the alleged delivery of the cease-and-desist letter, the Church sued Jose Jr. for trespass to try title, conversion, breach of fiduciary duty, and sought a declaratory judgment and injunctive relief among other things, to which Jose Jr. timely answered. The Church included with its pleading a warranty deed listing the Church as grantee in support of its allegations that the Church owned property located in Brownsville, Texas. Jose Jr. filed a third-party petition against Jose Sr., Janie Garza, Hermelinda, Maria Ortiz, and Laura Croasdale (the third-party defendants) asserting trespass to try title, breach of fiduciary duty, and conversion among other claims. In February of 2019, both parties filed pleas to the jurisdiction.

On October 2, 2019, the trial court set a hearing to hear witness testimony and allow the parties to present evidence. Hermelinda, Janie, and Jose Jr. testified at the

---

[4] The certificate of correction does not note whether this deletion referred to Jose Sr. or Jose Jr., but we note that the partial address designated therein matches the address of Jose Sr. listed in the articles of incorporation.

hearing, and Jose Jr. also presented two witnesses, Lorenzo Hernandez (Hernandez) and Orfalinda Hernandez, by affidavit as a proffer one day after the evidentiary hearing.

Hermelinda testified that (1) there were no corporate meetings, (2) discussions among Catalina, Jose Sr., and herself were not reduced to writing since they resided together, (3) they did not vote on things rather they just agreed on things, (4) there was no agenda, and (5) there was no notice of meetings. Further, Hermelinda explained she was the secretary/treasurer but she stopped handling the Church's deposits of offerings and tithes into the Church account in late 2006 because she got married; however, she did not stop being the secretary/treasurer. Janie testified that she does not recall any meeting where Catalina, Jose Sr., and Hermelinda voted her in as secretary or treasurer; although she later did not deny being in either role. Additionally, Janie testified that she, Hermelinda, and Jose Sr. were not happy about Jose Jr. becoming the pastor but they accepted it.

At the same hearing, Jose Jr. testified that he began acting as a pastor when his mother, Catalina, passed away, and that he found out about the Bylaws when the Church filed suit. Jose Jr. also testified that he was on the board of elders,[5] and conceded that he was not currently abiding by the Bylaws despite holding services twice a week out of his collision shop. Lastly, Hernandez stated in his affidavit that "Jose Rodriguez, Sr., and Hermelinda Rodriguez, claimed to be the only remaining directors after the death of Catalina Rodriguez. During the July 20, 2018 meeting, they did not elect any of the new

---

[5] The Church asserted in its briefing that that a Board of Elders does not exist. Specifically, in the statement of facts, the Church says: "The Church's pastor serves as President of the Board of Directors and ecclesiastical matters are governed by a 'Board of Elders'. However, it is undisputed that no one has ever acted in the capacity of Church Elder; nor has any such board been established." (internal citation omitted).

officers by a majority vote to the total Board of Elders because there was no Board of Elders."

After filing competing findings of fact and conclusions of law, the trial court entered findings of fact and conclusions of law on March 3, 2020, which provide in part as follows:[6]

Findings of Fact

FF5.   [The Church] failed to comply with the organizational and governing documents that existed to create, organize and govern the church; including Bylaws, the corporate structure with respect to compliance, the functioning of the Board of Elders, and the items set forth in the corporate documents[; and]

FF6.   [The Church] and [Jose Jr.] were equally guilty of not complying with the organizational and governing documents that existed to create, organize and govern the church.[7]

This appeal and cross appeal ensued.

---

[6] We note that while the Church refers to the findings of fact and conclusions of law in its briefing as those submitted by the trial court on February 14, 2020, it has not raised an untimely or harm objection to the later filed findings of fact and conclusions of law signed on March 3, 2020. Thus, we refer to the March 3, 2020, findings of fact and conclusions of law in this memorandum opinion. *See Jefferson Cnty. Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 960 (Tex. App.—Beaumont 1994, writ denied) ("If a judge files belated findings and conclusions, then the objecting litigant must show harm and injury."); *see also Cancino v. Cancino*, No. 13-13-00124-CV, 2015 WL 2160049, at *2 (Tex. App.—Corpus Christi–Edinburg May 7, 2015, no pet.) (mem. op.). Moreover, under *Jefferson County Drainage District*, the later findings control. *Id.* ("Under well-established decisional precedent, any conflict between the original findings and the amended findings are resolved definitely in favor of the later findings.").

[7] Since a trial court is not required to make fact findings on undisputed issues, we did not include all of the findings the trial court made on March 3, 2020, in this memorandum opinion. *See Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006) (stating that fact findings are not necessary when the matters in question are not disputed). However, a trial court can make findings of fact and conclusions of law on ultimate or controlling issues. *See ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.—El Paso 1996, no writ) (explaining that Texas Rule of Civil Procedure 198 only requires additional findings of fact and conclusions of law if they relate to ultimate or controlling issues). "A 'controlling issue' is one which, if answered favorable to the theory in which it is presented, will support a basis for judgment for the proponent of the issue." *Gomez v. Franco*, 677 S.W.2d 231, 234 (Tex. App.—Corpus Christi–Edinburg 1984, no writ) (holding in part that the trial court properly refused to submit appellants' requested issues to the jury because they were not controlling issues within Texas Rules of Civil Procedure 277 and 279). Moreover, we do not recite the conclusions of law as they are reviewed de novo, and conclude that finding of fact number seven, "FF7", is a conclusion of law, although it is listed as a finding of fact. *See ASAI*, 932 S.W.2d at 121 ("Conclusions of law are reviewable de novo.").

### III.    THE CHURCH'S APPEAL

#### A.    Jose Jr.'s Claims

In what we construe as the Church's first issue, the Church asserts that, as a pastor, Jose Jr. is precluded from presenting claims that substantively and effectively challenge his removal. In furtherance of the Church's contention, it argues that (1) matters involving the removal of a pastor or clergy are inherently ecclesiastical, (2) any failure by the Church to comply with its Bylaws in removing Jose Jr. as pastor is an ecclesiastical matter, and (3) no matter how Jose Jr.'s claims are pled, they substantively and effectively request that the trial court involve itself with the firing or disciplining of a pastor.

After arguing that the trial court should not have considered Jose Jr.'s claims because they are precluded on ecclesiastical grounds, the Church ultimately concludes that the trial court did not err, and requests that we sustain the trial court's dismissal of Jose Jr.'s claims. However, since the Church is not seeking to alter the trial court's decision, any opinion we would render on this issue would be advisory because the trial court has already entered a binding order that the Church does not desire to disturb on appeal. *See Tex. Workforce Comm'n v. Gill on Behalf of $2,583.45*, 964 S.W.2d 308, 310 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."); *see also Archie v. Tex. Dep't of Crim. Just., Institutional Div.,* No. 13-04-562-CV, 2005 WL 2551739, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 13, 2005, no pet.) (mem. op.) (explaining that a decision that does not bind the parties is, by definition, an advisory opinion); *see also* TEX. R. APP. P. 47.1, 47.4. Stated differently, if we issued an opinion on this issue, such opinion would merely act as guidance on the trial court's decision

6

without changing its impact. *See generally*, *Tex. Workforce Comm'n*, 964 S.W.2d at 310 (holding that appellee's claim seeks an advisory opinion because the purpose of appellee's suit is to obtain from the trial court guidance on how to satisfy rival claims). Accordingly, we overrule the Church's first issue.[8]

## B. Alleged Property Disputes

In what we construe as the Church's second issue, the Church asserts that because the trial court was precluded from adjudicating Jose Jr.'s claims, which challenged his removal, the trial court erred in dismissing the Church's claims involving disputes to its property. In furtherance of the Church's contention, it argues that (a) non-ecclesiastical claims are settled using neutral principles of law and the trial court cannot avoid exercising jurisdiction where it exists, and (b) the substance and effect of the Church's claims do not implicate ecclesiastical matters and can be settled by applying neutral principles of law. In the body of its argument, the Church only frames its claims for trespass to try title, conversion, and its declaratory judgment action as property disputes.

Jose Jr.'s response focuses on the alleged fraudulent nature of the Church's pleadings and its contention that the trial court should have dismissed the Church's claims under Chapter 66 of the Texas Civil Practice and Remedies Code pertaining to quo warranto actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 66.001–003.

---

[8] We note that the Church complains that the trial court should have granted its plea to the jurisdiction, but additionally asserts that the trial court did not err in dismissing Jose Jr.'s claims. Therefore, the Church is complaining about the timing or the means by which the trial court dismissed Jose Jr.'s claims; however, the Church ultimately obtained the relief it sought—dismissal of Jose Jr.'s claims. Notwithstanding the foregoing, we do not determine whether the Church has standing to challenge Jose Jr.'s claims.

### 1.　Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007); s*ee also Ceglar v. Christ's Harbor Church*, No. 13-19-00034-CV, 2020 WL 948380, at *2 (Tex. App.—Corpus Christi–Edinburg, Feb. 27, 2020, pet. denied) (mem. op). We focus on the plaintiff's petition first to determine whether the facts pled affirmatively demonstrate that subject matter jurisdiction exists. *Penley,* 231 S.W.3d at 394–95; *Torralva v. Peloquin*, 399 S.W.3d 690, 695 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied). When "[t]he pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause[,]" a court should deny a plea to the jurisdiction. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). If the pleadings affirmatively negate jurisdiction, then a plea may be granted without allowing a plaintiff the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). "We construe the pleadings liberally in favor of the plaintiff." *Peloquin*, 399 S.W.3d at 695. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.*

### 2.　Applicable Law

The First Amendment to the United States Constitution prohibits Congress from making any "law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend I; *In re Diocese of Lubbock*, 624 S.W.3d 506, 512–13 (Tex. 2021) (orig. proceeding) ("The First Amendment prohibits government—and courts—from interfering with a believer's ability to observe his faith and from interfering with a church's management of its internal affairs."). The Fourteenth Amendment imposes this restriction

8

on the states. *See* U.S. CONST. amends. I, XIV. The provision prohibiting the establishment of religion means that the government may not interfere with a religious organization's "ecclesiastical decisions." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S.171, 188–89 (2012).

"The ecclesiastical abstention doctrine prohibits civil courts from delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *In re Diocese of Lubbock*, 624 S.W.3d at 508–09 (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976)). However, the First Amendment does not bar all claims against religious bodies. *Tilton v. Marshall*, 925 S.W.2d 672, 677, 680–81 (Tex. 1996). A court may exercise jurisdiction over a controversary if it can apply neutral principles of law that will not require inquiry into matters such as religious doctrine. *See Penley*, 231 S.W.3d at 398–400; *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.); *see also Ceglar*, 2020 WL 948380, at *2 ("Under [a neutral principles of law] approach, a court may interpret church documents in purely secular terms without relying on religious precepts in resolving the conflict.").

"Under the neutral-principles methodology, courts decide non-ecclesiastical issues such as property ownership based on the same neutral principles of law applicable to other entities, while deferring to religious entities' decisions on ecclesiastical and church polity questions." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 596 (Tex. 2013) (internal citation omitted). Nevertheless, "[a]ny exception to ecclesiastical abstention by application of neutral principles must be narrowly drawn to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies." *In re Diocese*

9

*of Lubbock*, 624 S.W.3d at 513.

### 3. Analysis

The Church's trespass to try title claim, its conversion claim, and its declaratory judgment claim which the Church contends are substantively and effectively property disputes allege that:

> Trespass to Try Title. [Jose Jr.] is liable to [the Church] for Trespass to Try Title. [The Church] is the record owner of the Property and has had possession of the same for over twenty years. [Jose Jr.] has changed the locks to the Church and excluded [the Church] from access to the same. [Jose Jr.] is not a renter, nor does he have any ownership rights to the property at issue. Accordingly, [Jose Jr.'s] conduct is without right or entitlement and a violation of [the Church's] ownership rights to the property.

> Conversion. [Jose Jr.] is in charge of the Church's administrative recordkeeping, invoicing, expensing and collections. Moreover, as the alleged Pastor, [Jose Jr.] has full access to the Church's donations and the ability to bind the Church to agreements with third parties. [Jose Jr.] has used his position to unlawfully convert funds from the Church in the form of purchases for personal use and unverifiable payments to vendors or other third-parties.

> Declaratory Judgment. [The Church] incorporates all of the preceding facts into these paragraphs and, relying upon those facts, brings this declaratory judgment action pursuant to Texas Civil Practice and Remedies Code § 37.001 et seq., the Declaratory Judgment Act, for the purpose of settling any uncertainty and insecurity with respect to the Parties rights, status, and other legal relations to the IPF, the Church and its property.

> [The Church] seeks declaratory judgment that it is entitled to sole possession and access to the Church and its property. Pursuant to a valid deed filed of record in the Official Records of Cameron County, Texas, [the Church] is sole owner of the Church. Accordingly, [Jose Jr.] and his representatives have no right to expel or deny [the Church] and its representatives' access to the property. Furthermore, [the Church] further seeks a declaratory judgment that [Jose Jr.] has no right or authority to act on the behalf of [the Church] and its congregation. [Jose Jr.] has not been vested with any authority by [the Church's] board of directors.

Here, the trial court found that neither side complied with the Church's organizational and governing documents, including the Bylaws, a decision we find support for in the record, as discussed below. Therefore, we find that a determination of the Church's claims at issue would impermissibly embroil the trial court in a religious controversy to include choosing its church leaders. *See Retta v. Mekonen*, 338 S.W.3d 72, 77 (Tex. App.—Dallas 2011, no pet.) (explaining that "[t]he church's failure to follow its bylaws on a matter of internal governance is also a matter of internal church governance and ecclesiastical concerns, and the courts may not interfere with that decision"); *Dean*, 994 S.W.2d at 395 (concluding that the issue of a pastor's ouster is ecclesiastical in nature); *see also Peloquin*, 399 S.W.3d at 695 ("The ecclesiastical abstention doctrine prevents secular courts from reviewing many types of disputes that would require an analysis of [a] 'theological controversy . . . .'") (internal quotations omitted). Specifically, we find support in the record from the October 2, 2019 hearing, that neither side complied with the Bylaws because (1) Janie without proper authority conducted business on the Church's behalf by handling the Church's deposits;[9] (2) Janie conceded that she, Hermelinda, and Jose Sr. had knowledge that Jose Jr. became pastor of the Church;[10] and (3) Jose Jr. conceded that he was not even aware of the Bylaws existence until he was sued in 2018. Moreover, we find support in the record that neither

---

[9] Article III of the Bylaws state in relevant part that: "The officers in their collective capacity shall be known as the Board of Directors and under that name shall constitute the governing body, and shall conduct and transact all business of the corporation." Additionally, Article V of the Bylaws state in relevant part that: "[The Secretary and Treasurer] shall require all monies and other valuables and effects to be deposited in the name and to the credit of the Corporation in such bank or other depositories as may be designated by the officers and Directors."

[10] Article III of the Bylaws state in relevant part that: "[T]he President of the corporation shall be the [p]astor and he shall also be an active member of the Board of Elders."

side complied with the Bylaws because (1) Catalina unilaterally sought to remove Jose Sr. from the articles of incorporation through the filing of the certificate of correction in 2014;[11] (2) Jose Jr. allegedly installed an entirely new board in 2015 that did not consist of Hermelinda nor Jose Sr.;[12] and (3) Hermelinda and Jose Sr. purportedly elected a replacement director for Catalina in 2018 but the Church conceded in its briefing that a board of elders did not exist, and Hernandez, a witness proffered by Jose Jr., averred that a board of elders did not exist.[13]

Additionally, with regards to the Church's trespass to try title claim and the first declaration it seeks, a review of the warranty deed attached to the Church's live pleading plainly shows that the Church, as grantee, is the record owner, and we do not see any other conveyance instrument or lease in the record that shows otherwise, thereby clearly entitling the Church to possession and access. However, even with that determination, a trial court could still not resolve either claim without determining who governs the Church's affairs, as such persons would ultimately decide who is entitled to possession and access. *See generally, In re Diocese of Lubbock*, 624 S.W.3d at 516 (Decisions regarding "[w]hether a party's claims against a church are barred by the ecclesiastical abstention doctrine . . . [are based on] whether the substance and nature of the plaintiff's claims

---

[11] Article III of the Bylaws state in relevant part that: "[T]he present officers now duly constituted and elected shall consistute the Board of Directors, and they shall hold their officers permanently."

[12] Article III of the Bylaws state in relevant part that: "[T]he present officers now duly constituted and elected shall consistute the Board of Directors, and they shall hold their officers permanently."

[13] Article I of the Bylaws state in relevant part that: "The purpose of [the Church] shall be to establish a body of believers in the Lord Jesus Christ who will: [1] Be governed with the Lord Himself in the council of the elders with the senior pastor." Additionally, Article III of the Bylaws state in relevant part that: "[I]n the event of the death of any officer, the remaining [o]fficers, shall elect another officer to fill the vacancy from the Board of Elders." We note that despite the Church's assertion a board of elders does not exist, Jose Jr. testified that he was on the board of elders.

12

implicate ecclesiastical matters, including a church's internal affairs . . . [or] *governance* . . . .") (emphasis added). Further, the Church's second declaration is clearly a matter of church authority or governance as opposed to substantively and effectively a property dispute as it asks the trial court to declare that "[Jose Jr.] has no right or authority to act on the behalf of [the Church] and its congregation."

Moreover, to develop the Church's conversion claim would impermissibly force the trial court to decide the Church's corporate governance because to do so would require it to determine which board to inquire of for the reason behind the alleged unlawful use of funds. *See generally, El Pescador Church, Inc. v. Ferrero*, 594 S.W.3d 645, 657–59 (Tex. App.—El Paso 2019, no pet.) (concluding that the trial court lacked subject matter jurisdiction over conversion claim brought by church based on the ecclesiastical abstention doctrine); *see also In re Godwin*, 293 S.W.3d 742, 750 (Tex. App.—San Antonio 2009, pet. denied) (orig. proceeding) (concluding the trial court abused its discretion by asserting jurisdiction over former church member's fraud claim regarding misuse of church funds where they may have been approved by the church's finance committee and a biblical basis may exist to support some of the other disputed financial expenditures); *see also Walter v. Delgatto*, No. 14-05-00055-CV, 2006 WL 664214 at *2 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (mem. op.) (concluding that vexatious litigant's claims are beyond the trial court's subject matter jurisdiction because they relate to how and when the church may spend its resources and are thus ecclesiastic in nature).

Lastly, while the Church directs us to *Masterson*, we find such case inapposite because, as discussed above, a plain reading of the warranty deed shows that decisions regarding possession and access lie with the Church, but the trial court cannot determine

13

who governs the Church without entanglement in a religious controversy. *See Masterson*, 422 S.W.3d at 610. Therefore, we hold that the trial court was without subject matter jurisdiction over the Church's trespass to try title claim, its conversion claim, and its declaratory judgment action, and we overrule the Church's second issue. *See In re Godwin*, 293 S.W.3d at 749 ("Although wrongs may exist in the ecclesiastical setting, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities that may result from its liberal application.").

## IV. JOSE JR.'S CROSS APPEAL

### A. Alleged Fraudulent Pleadings and Quo Warranto Action

In his first two issues, which we address together, Jose Jr. argues that the trial court (1) improperly denied his plea to the jurisdiction because it refused to allow him to submit evidence of the Church's fraudulent pleadings by limiting the subject matter of the final hearing to the issue of whether the Church followed corporate formalities in its operations,[14] and (2) erred in denying Jose Jr.'s motion to dismiss for lack of subject matter jurisdiction on the grounds of quo warranto.

Because we have already determined that the trial court lacks jurisdiction, we need not consider these issues as they are not dispositive. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); 47.4; *see*

---

[14] Additionally, we observe that in the body of his argument, Jose Jr. also asserts that "[b]ecause no valid resolutions were passed on July 20, 2018 during the secret meeting, the church as an entity is not entitled to file this suit or seek injunctive relief because it lacks standing." However, we do not reach this argument since the trial court is without subject matter jurisdiction on other grounds as discussed in this memorandam opinion.

14

*also Doe v. Roman Cath. Diocese of Dallas*, No. 05-19-00997-CV, 2021 WL 3556830, at *11 (Tex. App.—Dallas Aug. 11, 2021, no pet.) (mem. op.) (declining to reach the remaining arguments by the parties after concluding that the trial court did not err in granting Roman Catholic Diocese of Dallas' plea to the jurisdiction). Accordingly, we overrule Jose Jr.'s first and second issue.

## B. Claims Against Third-Party Defendants

In his third issue, Jose Jr. asserts that the trial court erroneously dismissed his third party petition against third party defendants, whose wrongful acts and fraudulent pleadings resulted in a wrongful injunction against him, and the allegations against the third party defendants cannot be categorized as ecclesiastical in nature.

Other than citing to a case with regards to the standard of review, Jose Jr. does not direct us to any other authorties to show how the trial court erred in dismissing his third-party petition against the third-party defendants. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Instead, Jose Jr. focuses his argument on what the Church allegedly did to him or should have done, and that the remedy of quo warranto is applicable. Therefore, we conclude that Jose Jr. has waived his complaint for inadequate briefing, and overrule Jose Jr.'s third issue. *Id.*

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed on the
29th day of December, 2021.

15